215 So.2d 329 (1968)
CITY OF CORAL GABLES, a Municipal Corporation, Appellant,
v.
A.H. SAKOLSKY, Appellee.
No. 68-56.
District Court of Appeal of Florida. Third District.
September 24, 1968.
Rehearing Denied November 22, 1968.
*330 Charles H. Spooner, City Atty., and Robert D. Zahner, Asst. City Atty., Scott, McCarthy, Steel, Hector & Davis, Miami, for appellant.
Pallot, Silver, Pallot, Stern & Proby, Miami, for appellee.
Before PEARSON and HENDRY, JJ., and PIERCE, WILLIAM C., Associate Judge.
PIERCE, WILLIAM C., Associate Judge.
This is an appeal by appellant City of Coral Gables, a municipal corporation, from a final decree declaring invalid and unconstitutional a portion of the City's zoning ordinance, and ordering the City to issue to plaintiff therein, A.H. Sakolsky, a permit to build a building.
On January 5, 1965, Sakolsky filed application with the City Commission of Coral Gables for a permit to build a twelve-story high rise apartment building, encompassing 93 apartments and 167 automobile parking spaces. The proposed location of the building was on Lots 1, 2, 3, 33 and 34, Block 1, of Biltmore Section, located on the southeast corner of Balboa Plaza, facing the Granada Golf Course on the North. The applicable zoning regulations then in effect were contained in Section 9.03 of the Zoning Code of the City, as amended by Ordinance No. 1449, which provided inter alia that:
"[n]o building or structure to exceed three (3) stories or forty-five (45') feet in height shall be erected within the municipal limits."
Provisions were made in the Ordinance for granting an exception to such height restriction, within the discretion of the City Commission, and after certain specified "procedures and requirements" had been complied with. Section 9.03 is set out in the margin.[1]
*331 Subsection (d), paragraph 2, of Section 9.03, a part of the "Exception" provision, reads as follows:
"(d) The City Commission by ordinance shall provide standards, guides and qualifications to be considered with an application and shall not consider such application until written notification shall have been received by it from municipal agencies concerned that zoning, building or architectural requirements have been met."
Public hearing was held before the City Commission upon the application on January 26, 1965, at which time a large group of affected property owners were present and apparently, from the record here, voiced considerable objection to the application. After lengthy discussion, the Commission by vote of four to one adopted a Resolution deferring action upon the application pending further consideration and for the purpose of affording the Commission an opportunity to "provide standards, guides and qualifications" as contemplated in Subsection (d) aforesaid, which apparently had not therefore been done.
On February 5, 1965, Sakolsky filed mandamus suit seeking to coerce the City Commission to grant the application and issue the permit, contending as basis therefor that the Commission had no lawful authority to defer action upon the application and that its refusal to grant it was "arbitrary, unreasonable and illegal".
On April 27, 1965, the Commission enacted Ordinance No. 1475, amending Section 9.03 of the Zoning Code aforesaid, so as to prohibit the building of any apartment or hotel structure in the City more than three stories or 45' in height "on property abutting Coral Gables single family or duplex residence zone". The text of the amending Ordinance No. 1475 is set out in the margin.[2]
On October 12, 1965, almost six months after Ordinance No. 1475 was enacted, Sakolsky filed the instant suit in the Dade County Circuit Court, asserting the unconstitutionality of the original Ordinance No. 1449 insofar as it authorized the City Commission to withhold approval of a permit to construct an apartment building of more than three stories. Specific grounds of alleged invalidity were that the Ordinance "left to the sole discretion of the City Commission" the approval or disapproval of an application to "erect a structure in excess of three stories" and that the Commission had "failed to provide * * standards, guides and qualifications" although the Ordinance had specified that such would be provided. The complaint contended that the application was governed by the Ordinance existing at the time application *332 was filed and that the subsequent enactment of Ordinance No. 1475 on April 27, 1965 was inapplicable, notwithstanding the complaint was not filed until October 12, 1965, almost six months later. The complaint prayed that the Court hold Ordinance No. 1449 unconstitutional and invalid, and by Final Decree order the City to issue to Sakolsky the building permit applied for. The City answered and moved to dismiss the complaint.
On November 21, 1967, the Court entered Final Decree finding "that Ordinance No. 1449, Sec. 9.03 subsec. 2(d) is invalid", that therefore "there was no regulatory ordinance pertaining to the high rise application which was valid and enforceable at the time", that the City Commission acted "unreasonably" and "unjustifiably" in deferring action on Sakolsky's application on January 26, 1965, that his application was not subject to the subsequently enacted Ordinance No. 1475 because it could not "have a retroactive applicability" and that the Commission should have granted the permit because "the equities are altogether in favor of the plaintiff". The Court thereupon adjudged said subsection 2(d) unconstitutional and ordered the City Commission to issue the permit for the erection of the twelve-story high rise apartment building as set forth in the application. We disagree with the circuit court and reverse.
Three reasons exist why, in our opinion, the complaint should have been dismissed: (1) the original Ordinance, Section 9.03, subsection 2(d) is valid and constitutional, and the action of the Commission in deferring action on the permit was within its plenary authority; (2) the complaint was prematurely filed before the Commission had acted on the application, and (3) the case was governed by Ordinance No. 1475, which was in effect at the time suit was filed, the validity of which ordinance is not challenged. We will briefly discuss these propositions seriatim.

(1) Validity of Section 9.03 and the Action of the Commission.

The authoritative right of municipal zoning has been firmly fixed as the law of the land since Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. That case, decided by the U.S. Supreme Court in 1926, pioneered the right of a municipality through its legislative body, to regulate by ordinance the use or non-use of land and the nature and character of structural improvements thereon, within its municipal limits, subject only to constitutional limitations against discrimination, violation of due process, etc. As said by the high Court in Euclid 
"If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot  not the courts."
The rationale of Euclid was quickly followed by the Supreme Court of Tennessee in Spencer-Sturla Company v. City of Memphis, 155 Tenn. 70, 290 S.W. 608, which held:
"The reduction of fire hazards, provisions to reduce congestion in dwelling houses and neighborhoods, provisions designed to secure to families in their homes and laborers in their places of employment sufficient light and fresh air for their comfort and health, have a direct relation to and connection with the public purposes for which the police power may be exercised. So also are provisions for the preservation of property values. We think the segregation of residence districts from commercial districts within a particular city, the control of the height and bulk of buildings *333 with regard to the area of the lot on which such buildings are constructed, the limitation of the number of families who may occupy a single dwelling, are powers which may be reasonably exercised by a municipal government for the protection and promotion of the public health, safety, morals and welfare; and we have not been able to find any constitutional inhibition against the reasonable exercise of such powers by the state or municipality." (Emphasis supplied).
Yokley on Zoning Law and Practice, the leading textbook on the subject of zoning, contains a comprehensive review in its Second Edition, Volume 1, of the origin and development of municipal zoning.
The Florida Courts have kept the pace. Questions of zoning policy, of benefit or detriment, of what is good or bad for the city and the public, involve an exercise of police power and are essentially matters within the legislative orbit of the city. City of Miami Beach v. Greater Miami Hebrew Academy, Fla.App. 1959, 108 So.2d 50; Josephson v. Autrey, Fla. 1957, 96 So.2d 784. Zoning is the exclusive function of the appropriate zoning authorities and not the Courts, Hillsborough County v. Twin Lakes Mobile Home Village, Inc., Fla.App. 1964, 166 So.2d 191; Allen v. Secor, Fla.App. 1967, 195 So.2d 586, and a city's motive in enacting a zoning or rezoning ordinance is not subject to judicial inquiry. Housing Authority of City of Melbourne v. Richardson, Fla.App. 1967, 196 So.2d 489. Thus, zoning as applied to the height of buildings has been upheld, Town of Bay Harbor Islands v. Burk, Fla.App. 1959, 114 So.2d 225, and even compelling the discontinuance of an existing property use. Standard Oil Co. v. City of Tallahassee, CA5 Fla. 1950, 183 F.2d 410.
In Neubauer v. Town of Surfside, Fla. App. 1966, 181 So.2d 707, the circuit court had upheld a zoning ordinance of the town which restricted the use of property therein to multiple-family dwellings and hotels as a reasonable exercise of legislative discretion, but had stricken down as unreasonable and unconstitutional another zoning provision restricting construction on property to a height not exceeding two stories. Upon appeal, this court upheld the town zoning ordinance in toto, affirming the lower court as to multiple-family and hotel usage and reversing as to height of buildings.
In the Town of Bay Harbor Islands case, supra, this court, in reversing a circuit court decree holding invalid a town ordinance limiting the height of buildings to four stories upon a factual finding that the ordinance was unreasonable, said:
"Zoning as applied to the height of buildings is an exercise of the police power. The height limitation must be specific and must promote the health, welfare, safety, and morals of the public in order to be valid and withstand an attack upon it as an unwarranted exercise of that power. See City of West Palm Beach v. State [ex rel Duffey,] 158 Fla. 863, 30 So.2d 491. Or stated more generally, a statute or ordinance varying the maximum height of buildings according to the portion of the city in which the building is located is valid and constitutional if it is well calculated to promote the general and public welfare. Welch v. Swasey, 214 U.S. 91, 29 S.Ct. 567, 53 L.Ed. 923."
Reverting to the instant case, it cannot be doubted, therefore, that the City of Coral Gables had the right to enact Section 9.03 of the Zoning Code as amended by Ordinance No. 1449. As we read that section, an express prohibition is imposed in subsection 2 to the erection of any building or structure exceeding 3 stories or 45' in height within the municipal limits. An exception is provided by allowing the City Commission to grant a variance by a non-emergency ordinance; but even then, only after certain "procedures and requirements have been complied with", which are set out in subsections (a) through (h).
*334 Sub-section (d) provides for "standards, guides and qualifications" to be drawn up by the Commission and "considered with an application". Said subsection also provides that "no application may even be considered by the Commission" until written notification shall have been received by it from other concerned municipal agencies "that zoning, building, or architectural requirements have been met".
The fact that at the time Sakolsky's application was filed and the public hearing held, the standards, etc., had not been finally drafted cannot be the catalyst for striking down the Zoning Ordinance. The Commission could have, at the time of the hearing, denied the application peremptorily by determining that he should not be given a variance in any event. Also the Commission might well have been in the process at that time of considering what "standards, guides and qualifications" it would adopt. By deferring action on the application the Commission was really favoring Sakolsky by holding the matter open so that his application could be later determined in the light of the standards to be enacted. Also, the Commission had not received "written notification" from the other municipal agencies that their several pertinent requirements had been met, which, under subsection (d), barred the application from being even considered.
If the Commission had delayed unduly in thereafter drafting such standards, Sakolsky had a present judicial remedy. A long line of Florida cases hold that an inferior tribunal or Court is amenable to a writ of mandamus "to compel the exercise of jurisdiction clearly possessed". State ex rel. Claar v. Branning, 1923, 85 Fla. 61, 95 So. 237; State ex rel. Hopps v. Horne, 1918, 75 Fla. 149, 77 So. 672; Linning v. Duncan, Fla.App. 1964, 169 So.2d 862. But such writ would not lie to compel a judicial or quasi-judicial tribunal to exercise its jurisdiction in any particular way. Sanitarians' Registration Bd. v. Solomon, Fla.App. 1963, 148 So.2d 744. State ex rel. North St. Lucie River Drainage Dist. v. Kanner, 1943, 152 Fla. 400, 11 So.2d 889; State ex rel. Gardiner v. Blanton, 1933, 112 Fla. 305, 150 So. 263; State ex rel. Dykeman v. Petteway, 1928, 96 Fla. 74, 117 So. 696. It is true that Sakolsky instituted mandamus action against the Commission on February 5, 1965, but that suit sought the writ to compel the Commission to grant his application. The mandamus suit was dismissed voluntarily before final decree was entered in the instant case.
In addition to all the foregoing, the rationale of the late case decided by this court of Dade County v. Metro Improvement Corporation, Fla.App. 1966, 190 So.2d 202, is direct authority for the deferring of action by the Commission on the application in question. The action of the Commission, under the circumstances involved, was eminently proper.

(2) Failure to Exhaust Administrative Remedies

In the present case, Sakolsky made no effort to exhaust his administrative remedies. We have already alluded to his right to compel the Commission to take definitive action on his application by proper mandamus proceedings. He filed such action, but improperly sought to coerce the exercise of the Commission's discretion in his favor and not simply to compel the Commission to exercise its judgment within the orbit of its discretionary jurisdiction.
But even if such action had been properly limited in scope, it would seemingly have been premature because it was filed only ten days after the public hearing before the Commission. This could hardly be said to have given the Commission a reasonable time within which to consider or further consider the adoption of its "standards, guides and qualifications" before being compelled by judicial fiat to act.
In short, plaintiff elected to pursue his application before the courts, rather *335 than the legislative body of the City. Extensive citation of authorities is unnecessary as to the rule that a party must exhaust his administrative remedies before resorting to the courts to review administrative action. Ace Delivery Service v. Boyd, Fla. 1958, 100 So.2d 417. Sakolsky did not conform to this rule.

(3) Law at Time Suit is Filed is Controlling

Before the instant suit was filed in the circuit court, the Commission had enacted Ordinance No. 1475, which expressly prohibited construction of any apartment or hotel building of more than three stories or 45' in height on property such as described in Sakolsky's application to the Commission.
Plaintiff contended, and the circuit court so held, that the Ordinances of the City in effect at the time he filed the application and had the public hearing governed the legality of his application and the proceedings thereunder, rather than Ordinance No. 1475. We disagree.
The complaint filed in the Circuit Court was not one for declaratory judgment or decree, nor an injunctive action, and it is unclear just exactly what category of action was meant to be filed. No declaratory decree was prayed for nor the requisite averments contained therein to warrant it. The same holds true for injunction.
But be that as it may, it was certainly not a certiorari proceeding or a mandamus suit. In fact, plaintiff had a mandamus suit pending at the time, which he later dismissed. In such situation, the instant complaint, if maintainable at all, could only be categorized as a civil suit filed (in 1965) on the equity side of the court.
It is established in Florida that in law actions "the right of a plaintiff to recover must be measured by the facts as they exist when the suit was instituted". Voges v. Ward, 1929, 98 Fla. 304, 123 So. 785. And the same rule applies to equity proceedings. Meredith v. Long, 1928, 96 Fla. 719, 119 So. 114. See also to the same effect, Hasam Realty Corp. v. Dade County, Fla.App. 1965, 178 So.2d 747; Tomayko v. Thomas, Fla.App. 1962, 144 So.2d 335; Mutual Ben. Health & Accident Ass'n. v. Ott, 1942, 151 Fla. 185, 9 So.2d 383; and Stegemann v. Emery, 1933, 108 Fla. 672, 146 So. 650. In fact, this Court, in the per curiam majority opinion in Davidson v. City of Coral Gables, Fla.App. 1960, 119 So.2d 704, text 708, held that "* * * the law as it stands at the time of the decree, rather than at the time of application or filing of the suit, controls the decision thereon". In the instant case, however, whether the law at the time suit is filed or the decree is entered governs, is of no consequence, inasmuch as Ordinance No. 1475 was in force at both times. But Davidson is important in setting forth the exception, not applicable here, to the general rule aforesaid, which exception we reaffirm.
The instant suit was filed on October 12, 1965. This was almost six months after Ordinance No. 1475 was enacted and became effective, and nine months after the application for permit was filed and hearing held thereon by the City Commission. Plaintiff Sakolsky's rights were clearly governed by Ordinance No. 1475.
We think the decree appealed should be reversed upon all three of the foregoing propositions, but any one would warrant such disposition.
Reversed and remanded.
NOTES
[1] "Section 9.03 Height of Buildings:

* * * * *
2. No building or structure to exceed three (3) stories or forty-five (45') feet in height shall be erected within the municipal limits except by a non-emergency ordinance adopted by the City Commission after the following procedures and requirements have been complied with; except as provided for under paragraph (3) hereinafter, to-wit:
(a) A public hearing concerning any application shall be held before the City Commission.
(b) All real property owners of record within a radius of five hundred (500') feet of the real estate for which the application is sought shall be mailed written notification of such hearing by the City Clerk at least ten (10) days prior to the date thereof; such written notification shall contain a form directing that the owner indicate his approval or disapproval, which form shall be received by or filed with the City Clerk not later than (1) one day before such hearing.
(c) Advertisement of such hearing shall be published in a newspaper of general circulation in the county at least ten (10) days prior to such hearing.
(d) The City Commission by ordinance shall provide standards, guides and qualifications to be considered with an application and shall not consider such application until written notification shall have been received by it from municipal agencies concerned that zoning, building or architectural requirements have been met.
(e) In the event fifty (50%) per cent or more of the real property owners within the radius set forth above register with the City Clerk written disapproval of said application within the time set forth above, then said application shall not be granted by the City Commission unless the same is adopted by an affirmative vote of four-fifths (4/5) of the Members of the City Commission.
(f) The granting of any such application by the City Commission shall be accomplished in all cases only by a non-emergency ordinance, and no further application pertaining to said property or any portion thereof shall be considered by the Commission for a period of one (1) year in the event the former application has been denied.
(g) All structures hereafter built under the terms of this section shall be subject to and governed by all regulatory ordinances pertaining thereto, which may be adopted from time to time by the City Commission.
(h) Applicants for constructing of a building of more than three (3) stories in height shall be required to pay a fee of Fifty ($50.00) Dollars at the time of filing such application with the City Clerk."
[2] "Section 9.03 Height of Buildings  General, Special Use and University of Miami.

* * * * *
(b) No apartment or hotel building shall be constructed in Coral Gables more than three (3) stories or forty-five (45') feet in height on property abutting Coral Gables single family or duplex residence zone.
(c) No apartment or hotel building shall be constructed in Coral Gables more than three (3) stories or forty-five (45') feet in height on property across the street from Coral Gables single family or duplex residential zone."