**INTERCONTINENTAL GROUP, Inc., et al v. DADE COUNTY, et al.**
No. 75-14947.
Circuit Court, Dade County.
March 15, 1976.

Jack J. Weiss, Miami, for petitioner Intercontinental Group, Inc.

S. Alan Stanley, Coral Gables, for petitioner General Electric Credit Corporation of Georgia.

Stuart L. Simon, County Attorney, and Stanley B. Price, Assistant County Attorney, for respondent Dade County.

Richard L. Horn, Miami, for South Florida Regional Planning Council.

SAM I. SILVER, Circuit Judge.

This cause came on to be heard upon the filing of a petition for writ of certiorari from the adoption of a zoning resolution by the Dade County Board of County Commissioners and the court having reviewed the briefs filed by counsel, reviewed the applicable Florida Statutes, reviewed the entire record herein and having heard oral argument of counsel, finds that the court lacks subject matter jurisdiction of this cause, and states as follows —

Chapter 380, Florida Statutes, "The Environmental Land and Water Management Act," is one of the most significant developments in land use law in the United States in recent years. Patterned after drafts of the American Law Institute's Model Land Use Code, it places Florida in the forefront in recognizing the proper roles of regional and state interest in major land use decisions.

The purpose of the Act, set out in §380.021, provides that in order to: * * * facilitate orderly and well-planned development and protect the health, welfare, safety and quality of life of the residents of this state, it is necessary adequately to plan for and guide growth and development within this state."

The Development of Regional Impact or "DRI" [1] process, created in §380.06, is one of the two major legislative vehicles for the introduction of regional and state interest into the traditionally local sphere of land-use decisions.

It was recognized by the legislature that DRI scale development, i.e., large scale residential developments, shopping centers, schools, airports, major attractions, office parks and the like, typically affect areas wider than the local jurisdiction in which they are located. A process was created, therefore, by which the local government would, in the first instance, have the benefit of the report and recommendations of the regional planning agency upon the regional impacts of a proposed development *prior* to making its decision. §380.06 (8), F.S.

The statute requires consideration by the council of the following criteria set forth in §§380.06 (8) (a-f) —

"[W]hether and the extent to which:

(a) The development will have a favorable or unfavorable impact on the environment and natural resources of the region:

(b) The development will have a favorable or unfavorable impact on the economy of the region;

(c) The development will efficiently use or unduly burden water, sewer solid waste disposal, or other necessary public facilities;

(d) The development will efficiently use or unduly burden public transportation facilities

(e) The development will favorably or adversely affect the ability of people to find adequate housing reasonably accessible to their places of employment; and

(f) The development complies or does not comply with such other criteria for determining regional impact as the regional planning agency shall deem appropriate."

The Regional Planning Council formally considers and adopts its report and recommendations at a public hearing, and then transmits them to the local government. The local government is required, by statute, to consider the report and recommendations of the council. §380.06 (11) (c), F.S.

In the case at bar the report and recommendations of the South Florida Regional Planning Council (hereinafter "council") pertaining to petitioners' property were adopted on August 8, 1974 and transmitted to the Metropolitan Dade County Board of County

---

**1.** The second vehicle of regional and state interest, in "Areas of Critical State Concern," created by §380.05, is not involved in this case.

Commissioners. [2] The report recommended *denial* of the project based upon five negative impacts upon regional issues — master plan implementation; drainage; education; housing for low-moderate income families; transportation. In addition, the report summarized the positive and negative impacts (local as well as regional) and found four positive, as opposed to twenty-five negative impacts.

Substantial changes were made by the petitioners in the project after the report and recommendations were adopted, and prior to the county commission hearing on April 9, 1975. It suffices for purposes of consideration of this court's jurisdiction that the county commission denied the zoning changes and development permits sought by the petitioners. [3]

The order of the commission denying this approval was a "Development Order" as defined in §380.031 (2) —

> " 'Development Order' means any order granting, *denying,* or granting with conditions an application for a development permit."

Once a development order has been entered by the local government, the second major aspect of state and regional interest in the land use decision is employed. This is the role of the Florida Land and Water Adjudicatory Commission (State Cabinet), which is created by §380.07. Within thirty days after the rendition of a development order in regard to any Development of Regional Impact, either the owner, *developer,* the regional planning agency, or the state land planning agency may appeal to the adjudicatory commission by filing a notice of appeal with the commission. §380.07 (2), **F.S.**

The petitioners had a full right and opportunity, if they were aggrieved by the development order, to avail themselves of this administrative remedy provided by statute. The adjudicatory commission has full power to hold either *de novo* hearings or hearings upon the record, issue subpoenas and compel the production of evidence, administer oaths and take whatever testimony may be necessary. The commission is required within the very brief time frame of 120 days to issue a decision granting or denying permission to develop, which may contain conditions or restrictions.

---

**2.** The respondent, South Florida Regional Planning Council, intervened in this action pursuant to this court's order.

**3.** The petitioner, General Electric Credit Corporation of Georgia (GECC), is the mortgagee of the subject property with an option to purchase the subject property. On July 24, 1975, GECC and respondent Dade County entered into a stipulation which permitted GECC to be a party petitioner herein.

Under well settled principles of administrative law the petitioners were not only entitled to take this administrative appeal, they were *required* to do so and this petition should be dismissed as a consequence. The rule requiring the exhaustion of administrative remedies was succinctly stated by the Florida Supreme Court in a recent decision —

"Where a method of appeal from an administrative ruling has been provided, such method must be followed to the exclusion of any other system of review. Where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act." *Florida Weld. & E. Serv. Inc. v. American Mut. Ins. Co.,* 285 So.2d 386, 389-90 (1973).

The doctrine has been fundamental in Florida law for many years. See 1 Fla. Jur., *Administrative Law,* §175; *Pushkin v. Lombard,* 279 So.2d 79 (3rd D.C.A. 1973); *City of Coral Gables v. Sakolsky,* 215 So.2d 329, 334-5 (3rd D.C.A. 1968); *DeCarlo v. West Miami,* 49 So.2d 596 (Fla. Sup. Ct. 1950).

There are good reasons for this general rule, and for its application here. The legislature has determined by the adoption of Chapter 380, that the state and region are to have a voice in the land use decisions affecting DRI scale developments. The appeal process established in §380.07 is the means by which the council, as a party to the appeal of the local government decision, and the adjudicatory commission, through its power of final decision, exert the interest of the region and state in these vital decisions. Judicial review is then available in accordance with Part III of Chapter 120, in the District Courts of Appeal. §380.07 (5), F.S.

Owners and developers are expressly granted the right in the statute to appeal orders denying the right to develop to the adjudicatory commission. §380.07 (2), F.S. A number have done so since the procedure was established, *e.g., In re: A Development of Regional Impact in the County of Broward, Florida, by Millstream Corporation,* Docket No. 74-11, Florida Land and Water Adjudicatory Commission. The adjudicatory commission may exercise its decision-making power to allow development, as well as to prevent it. Further, the court is not persuaded by petitioners' argument that the word "may" is utilized in §380.07 (2) and as such the petitioners are permitted alternative methods of appellate review. If the word "shall" was employed in place of the word "may", developers would be required in all instances to seek review of an unfavorable recommendation by a local governmental unit. This would usurp the discretion of a developer or other party permitted by the statute as to whether to pursue further administrative review of an adverse ruling. All final orders entered by this court *may* be appealed but are not required to be appealed.

By short-circuiting the process with a premature resort to the courts, the petitioners have prevented the full expression of the state and regional interests in the land use decision, which would be developed by the administrative appeal prior to judicial review. This is exactly the reason for the doctrine of exhaustion of administrative remedies. Compare, *DeCarlo* v. *West Miami, supra.*

The U.S. Supreme Court has stated —

> "The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings." *Aircraft and Diesel Equipment Corp.* v. *Hirsch,* 331 U.S. 752, 767 (1947).

A decision of the adjudicatory commission in petitioners' favor would have obviated the need for judicial review.

A second independent reason exists for the dismissal of the petition based upon petitioners' failure to exhaust their administrative remedies. As described earlier, the initial expression of the regional interest in the DRI decision is the council's preparation of the extensive report and recommendations on the development. Fundamental to the integrity of the process is the premise that the council's report and recommendations are accurately describing the development which is being proposed. To require less would render meaningless the requirement of §380.06 (11) (c) that the local government *must* consider whether the development is consistent with the report and recommendations of the council mandated in turn by provisions of §380.06 (8.)

The petitoners in the present case, however, substantially modified their proposed development *after* the report recommendations of the council were adopted and transmitted, and before the public hearing before the Metro Commission. No new or amended application was submitted for review by the council reflecting the changes which had been made in the proposed development, which included a change in the total number of units proposed on the order of fifteen percent. Such a substantial modification of a DRI proposal requires a new or amended application and an additional review, in order for the council to produce a report and recommendation which bears a relationship to the actual decision facing the local government.

Failure to require such resubmission would stymie the process of decision-making throughout. The local government would have a report and recommendation which is of little use in its delib-

eration. Expressly stated in §380.06 (8) is the requirement that the council assess the impacts of the development upon the wide variety of regional issues — the environment and natural resources, the economy, public facilities, water, transportation, housing, etc. Substantial modifications in the development proposal obviously would alter these impacts.

In the absence of resubmission and a new review by the council resulting in a report and recommendation upon the project as modified, the situation such as has occurred in this case would become frequent. The petitioners, having unilaterally made changes in their development proposals, and without submitting the changes formally to the council made claims to the county commission that many of the negative regional impacts of their proposal had been resolved.

The executive director of the council appeared at the public hearing before the county commission and stated that the decision as to whether negative impacts upon regional issues have been resolved or not is made by the council itself and not by its staff. The council recommended that the proposal as substantially changed should be filed as a new application for development approval under §380.06 for review by the council.

The petitioners *accepted* this position before the county commission, their counsel stating—

"The DRI statements have been answered. If Mr. Peterson is correct about the 15% change that we are talking about, where we actually are discussing a reduction of approximately 600 units, then conceivably we will have to go back to the South Florida Regional Planning Council, and we would be willing to go back on either method Mr. Peterson is recommending."

"We would hope that this board would be able to move approval of this project at this time subject only to it being returned to the SFRPC for a review of the reduction in density, or that this board would defer action on this and allow this to be brought back to the SFRPC for a review for the proposal of the reduction of density."

The petitioners squarely recognized, therefore, the necessity of their changed development proposal being returned to the council for an assessment of the regional impacts resulting from the changes. In the absence of such a revised application and consideration by the council, the petitioners have failed to comply with provisions of §380.06. Their Development of Regional Impact may not be granted any development approval until the mandatory administrative procedures required by §380.06 have been fully exhausted.

Neither *Sarasota County* v. *Beker Phosphate Corp.*, 1st Fla. App. 1975, 322 So.2d 655, nor *Sarasota County* v. *General Development Corp.*, 2nd Fla. App. 1976, 325 So.2d 45, support GECC's claim that as a mortgagee holding an option upon the property in question it need not exhaust the statutory requirements of Chapter 380. In both cited cases, Sarasota County was a "stranger to the proceedings". *Beker*, 322 So.2d at 658. Here, far from being a "stranger", GECC is a "developer" as it is defined in the Act, §§380.03 (2) (3) (4) and §380.04. GECC seeks in this action the same development approvals which Intercontinental Group, Inc. sought from the Metropolitan Dade County Commission, i. e., zoning and other approvals to undertake a Development of Regional Impact. It seems plain that GECC can have no greater standing to obtain development approvals for the proposed project than the owner, and must stand in the owner's shoes where it seeks the identical result. Anything less would create chaos, as holders of lesser interests could claim the ability to avoid the procedures which are required by those having the fee or most substantial interest in the property.

It is therefore ordered and adjudged that — (1) The petition for writ of certiorari is dismissed. (2) Each party shall bear its own costs.