W. C. SPENCER, as Sheriff of Hillsborough County, Florida, *Plaintiff in Error,* v. M. T. HUNT, *Defendant in Error.*

147 So. 282.

Division A.

Opinion filed March 24, 1933.

McKay, Withers & Ramsey, for Plaintiff in Error;

R. J. Duff and L. D. McGregor, for Defendant in Error.

ELLIS, J.—In October, 1932, an information was filed in the Criminal Court of Record for Hillsborough County, which charged M. T. Hunt with the offense of unlawfully practicing "dentistry and dental surgery" within the meaning of the provisions of Chapter 14708, Laws of Florida, 1931, in that he was not a duly licensed or registered dentist or dental surgeon on May 14, 1931, on which date the above named statute became a law.

The information charged that Hunt at no time prior to the filing of the information had been either duly licensed or registered to practice dentistry or dental surgery in Florida, nor was he a commissioned officer of the United States Army, Navy or Marine Hospital, nor did his work consist of laboratory work on inert matter only, nor had a certificate or license ever been issued to him to practice that profession.

Hunt was held for trial under that information and on January 11, 1933, secured a writ of habeas corpus from the Circuit Court for Hillsborough County and obtained his discharge in that proceeding from the custody of the sheriff.

The view of the Honorable F. M. Robles, Circuit Judge, as expressed in the order discharging the petitioner was that the Act referred to above was in violation of the Constitution.

The sheriff of the county by petition before the court obtained an order granting a writ of error. Sec. 5444 C. G. L 1927.

The Act was attacked by the petitioner in the Circuit Court upon seven grounds each resting upon some provision of the Constitution. In cases of this nature where the court of original jurisdiction declares an Act of the Legislature to be in conflict with the Constitution, the presumption does not obtain in the appellate court as in other cases on writ of error from this Court that the judgment of the trial court is accurate. Obviously no such presumption can exist because the question of the validity of the Act is presented directly for determination by this Court and the presumption obtains in favor of the constitutionality of the Act, which may not be held bad unless the Court is convinced beyond a reasonable doubt of its invalidity. See State v. Bryan, 50 Fla. 293, 39 South. Rep. 929; Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747.

It must be assumed that the Legislature intended a valid enactment. See Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226; State v. Phillips, 70 Fla. 340, 70 South. Rep. 367.

One who assails an Act of the Legislature as unconstitutional has the burden of showing beyond a reasonable doubt that such Act is in conflict with some designated provision of the State or Federal Constitution. See Board of Cmm'rs of Everglades Drainage Dist. v. Forbes Pioneer Boat Line, 80 Fla. 252, 86 South. Rep. 199; Neisel v. Moran, 80 Fla. 98, 85 South. Rep. 346.

The statute should be so construed, if fairly possible, as to avoid not only the conclusion that it is unconstitutional but also grave doubts' upon that score.  Burr v. Florida East Coast R. Co., 77 Fla. 259, 81 South. Rep. 464.

Therefore Hunt, who was successful in obtaining his discharge from custody upon the theory that the Act, the provisions of which he was charged with violating, was unconstitutional, must as the question is transferred to this' Court still carry the burden of showing the Act to be invalid.  Although the judgment of the court below would stand if no writ of error had been taken, nevertheless the burden still rests upon the person attacking the Act to show its invalidity, now that a writ of error was taken, because the question whether the court erred in holding the Act invalid is the equivalent, now since the case is here, of whether the Act is valid.

The first attack made upon the Act is that it violates Section 16, Article III, of the Constitution in that the title to the Act is "misleading and does not embrace the provisions in the body of the Act."  The title of the Act is as follows:

"AN ACT to Regulate the Practice of Dentistry, Dental Surgery and Dental Hygiene in the State of Florida, and to Provide Penalties for the Violation of Any of the Provisions of This Act."

It is contended that the title does not indicate that a Board of Dental Examiners is to be created thereby, nor to indicate that the Board of Examiners existing under the Act of 1925 (repealed by the 1931 Act) was to continue in office until January 1, 1932, and that thereafter the Governor should appoint the members of the Board, nor that fees were to be collected from applicants for examinations, licenses and registrations of persons engaged in

the practice of dentistry, nor does the title indicate that large sums of money were to be collected by the Board and by it expended in such manner as to the Board seemed proper.

It is not denied that the arts of dentistry, dental surgery and dental hygiene may be comprehended under the one word dentistry, and that the practice of that art or any phase of it is not a business which the State in the exercise of its police power may regulate by suitable legislation to the end that the health of the public may not be jeopardized by incompetent persons uninstructed in the science of the structure, function, and therapeutics of the mouth and contained organs, teeth and dental alveoli and the surgical and prosthetic treatment of them, who may without any restrictions of law as to character and learning upon the subject through their ignorance and lack of character spread suffering and disease among the people in an effort to exploit those who may need treatment.

The practice of dentistry is not an absolute, unqualified or vested right, but is subordinate to the police power of the State. In the proper exercise of the police power the Legislature may control and reasonably regulate the practice of dentistry. Such regulations must be reasonable and bear some relation to the service to be rendered by the practitioner, as well as to the end to be attained. The statute therefore insofar as its purpose is to regulate the practice of dentistry is not contrary to public policy nor is it without the domain of the exercise of the police power. See Noble v. State, 68 Fla. 1, 66 South. Rep. 153.

The point to be determined under this attack therefore is whether the obligations itemized in the brief and set forth above relate to matters so irrelevant and unrelated to the subject of the Act as expressed in the title as to

violate the constitutional provision requiring the subject of the Act to be briefly expressed in the title. Sec. 16, Art. III, Constitution.

The "subject" of an Act is the matter to which it relates, the "object" is its general purpose. Although the two terms are held to be equivalent by some authorities the better view is that the word "subject" is a broader term than the words "object," as one subject may contain many objects. See *Ex parte* Hernan, 45 Tex. Crim. Rep. 343, 77 S. E. Rep. 225.

The Constitution uses the word "subject," which is required to be briefly expressed in the title of an act. The Act under consideration has several objects. To avoid prolixity only a few need be mentioned. One is to define the term practicing dentistry, another to continue the old Board of Examiners and to create a new board by appointment of the Governor after January 1, 1932, another is to provide the means by which the Board may function and defray its necessary expenses to fully accomplish the purpose of the act, and one to define the powers of the Board and to regulate the procedure for procuring certificates by applicants for the privilege to practice.

Whether such objects are so unrelated to the subject of the act as to be subject to the criticism that they are not germane, have no appropriate place in an act dealing with the matter of regulating the practice of dentistry, so that the subject as expressed in the title may be said to be misleading and a cloak for legislating upon dissimilar matters, is the question. See State v. Bryan, *supra;* Schiller v. State, 49 Fla. 25, 38 Sou. Rep. 706; Fine v. Moran, 74 Fla. 417, 77 Sou. Rep. 533; Florida E. C. R. Co. v. Hazel, 43 Fla. 263, 31 Sou. Rep. 272; Ex parte Pricha, 70 Fla. 255, 70

Sou. Rep. 406; In re DeWoddy, 94 Fla. 96, 113 Sou. Rep. 677.

Only the subject and not matters' properly connected therewith is required by the Constitution to be expressed in the title to the Act. See Hayes v. Walker, 54 Fla. 163, 44 Sou. Rep. 747; Thompson v. State, 66 Fla. 206; 63 Sou. Rep. 423; Butler v. Perry, 67 Fla. 405, 66 Sou. Rep. 150; Ex parte Gilletti, 70 Fla. 442, 70 Sou. Rep. 446.

When the title of the Act expresses its subject with such sufficient certainty as to give reasonable notice of matters dealt with by the Act and of its scope, and reasonably leads to inquiry as to its contents though not an index to the act as to all its related provisions, it is sufficient. See Lainhart v. Catts, 73 Fla. 735, 75 Sou. Rep. 47.

There must be a plain violation of the requirements of the constitutional section and article referred to before the court will nullify statutes as not being within the subject embraced in the title and of "matter properly connected therewith." Rushton v. State *ex rel.* Collins, 75 Fla. 422, 78 Sou. Rep. 345; Smith v. Chase, 91 Fla. 1044, 109 Sou. Rep. 94; Van Pelt v. Hilliard, 75 Fla. 792, 78 Sou. Rep. 693; State *ex rel.* Terry v. Vestel, 81 Fla. 625, 88 Sou. Rep. 477.

Provisions that are necessary incidents to or tend to make effective or promote objects and purposes of legislation included in the title of an act may be regarded as matter properly connected with the subject. Smith v. Chase, *supra.*

Guided by the rule as exemplified by the decisions of this Court to which reference has been made, and many others not included in the above citations, the conclusion is inevitably reached that if the matters contained in the Act and referred to above, which are urged by the defendant in error as invalidating the Act, are necessary incidents to or

that tend to make effective or to promote the object and purpose of the legislation of which the title gives reasonable notice to both legislators and the people such matters may be regarded as properly connected with the subject of the Act.

In view of the progress of modern science, especially in such professions as medicine, surgery and dentistry, and the close relation which such sciences bear to the general welfare, and the danger to the health of the public, which ignorance, charlatanry and dishonesty on the part of those who may seek to engage in vocations covered by such sciences as a means to a livelihood, it is a matter of general knowledge that a regulation by law of the practice of such professions involves numerous details constituting the machinery through the operation of which an efficient regulation of such practice is obtainable.

The Act is not a revenue producing measure. It is not enacted in the exercise of the taxing power but in the exercise of the police power to promote public health, or at least to safeguard it from the disastrous effects of ignorance, dishonesty and charlatanry on the part of those who for a consideration for their so-called professional services pretend to administer to the necessities of the sick, the halt and the lame of our population.

To "regulate" the practice of such profession it is necessary therefore to provide as above suggested an elaborate if not complex machinery. These incidentals may be called the mechanics of the Act, not only incidental to but essential parts of the subject. Provision must therefore be made for some agency to which application may be made by all persons who desire to follow the vocation of the practice of dentistry; conditions must be prescribed on which such applications may be made; provision must be made for the

creation or establishment of the administrative agency; the means by which its expenses may be met and incidental pecuniary obligations discharged, which include such items as traveling expenses of the members of the Board of Examiners, the cost of making and preservation of records, printing regulations and rules and such other expenses as will enable the Board to keep itself advised through the connection with other boards and associations of similar nature in other States of the progress and discoveries relating to the science or art. Efficiency in such matters is essential to reasonable and accurate regulation. The expenses incident to hearings not only of applicants for certificates, but of all matters of protest against practitioners charged with violations of the prescribed rules and regulations.

It is also true and a matter of general knowledge that occasionally, not to say frequently, a person after obtaining a certificate, and thereby acquiring something of property right to the practice of his profession, consciously or unconsciously, recedes from the generally recognized and accepted standards of honesty and scientific efficiency necessary in the practice to reasonably secure the beneficial result to be obtained. A reasonable regulation of the practice should contain suitable provision for such cases. Whether "vast sums of money" are collected by the Board as fees from applicants is purely incidental, depending upon the meaning of such phrase and the number of applicants for certificates. In any case the potential collections cannot be said to be unreasonable to the point of being an arbitrary exercise of power.

The doctrine announced in Webster v. Powell, 36 Fla. 703, 18 Sou. Rep. 441, we affirm. The case holds, as counsel contend, that for the title of an act to be insufficient it must be a false, deceiving title calculated to mislead members of

the legislature into voting for bills containing provisions of which the title gives no intimation. In that case the Act was held to be void, but there is no analogy whatsoever between that case and the one at bar.

The case of State *ex rel.* Davis v. Fowler, 94 Fla. 752, 114 Sou. Rep. 435, while holding the Act under consideration in the case to be bad as in conflict with the provisions of Section 16, Article III of the Constitution, deals principally with the question of the delegation of legislative power which is not involved in that phase of the discussion presented by paragraph (a) of Section III of the petition which relates to the alleged sufficiency of the title. Our conclusion is that the title to the Act is sufficient and does not violate Section 16 of Article III of the Constitution.

The next attack made upon the Act is contained in paragraph (b) of Section III of the petition, which raises the point of delegation of legislative authority in violation of Section I of Article III of the Constitution, which provides that the legislative authority of the State shall be vested in a Senate and House of Representatives and in violation of Article II relating to the division of powers.

It is true that the power which appertains exclusively to the legislative department cannot be lawfully delegated. See State *ex rel.* Young v. Duval County. 76 Fla. 180, 79 Sou. Rep. 692.

The doctrine announced in that case is that an act of the Legislature must be complete in itself, designed to accomplish a general purpose; that the Legislature may expressly authorize designated officials within definite limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose, but it may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted

discretion in applying the law. In that case the statute involved provided for the issuing of bonds by the County Commissioners of Duval County for the construction of a bridge over the St. Johns river, to designate the amount to be raised by a bond issue for that purpose, prescribe the rate of interest and time and place of payment and to fix tolls or charges for use of the bridge subject to the approval of the Circuit Judge. The act was held to be valid. In the able opinion of Mr. Justice WHITFIELD in that case it was pointed out with clearness that official duties, authority and functions prescribed by law for exercise by some created agency are not necessarily governmental powers within the meaning of the Constitution which may not be delegated; that the division of powers governmental is abstract and general and is intended for practical purposes; that there has been no complete and definite designation by a paramount authority of all particular powers that appertain to each of the several departments, and perhaps there can be no absolute and complete separation of all the powers of a practical government.

In the case of Whitaker v. Parsons, 80 Fla. 352, 86 Sou. Rep. 247, it was held that the character and extent of appropriate regulations to be enforced for any given purpose are within the discretion of the law making power "subject only to organic provisions securing private rights."

The law involved in that case was known as the "Cattle Tick Law," Chapter 7345, Acts 1917. The State Live Stock Sanitary Board was vested with many powers, among which was the power to prescribe regulations for carrying out the provisions of the Act. Among the regulations prescribed, without any express authority in the Act for it, was that pertaining to the dipping of cattle by driving them into a vat containing a poisonous solution intended to de-

stroy tick infection likely to exist on cattle. Parsons was held under a warrant charging him with failure to observe a regulation of the Board pertaining to the dipping of cattle. The Act was upheld and the powers conferred upon the Board were not regarded as powers clearly appertaining to the Legislature which could not be delegated.

In the Fowler case, *supra,* the Court affirmed the rule announced in State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 Sou. Rep. 969, relating to the delegation of legislative power to enact a law or to exercise an unrestricted discretion in applying a law, but it may enact a law complete in itself designed to accomplish a general purpose and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. But it was pointed out in the Fowler case, *supra,* in the able opinion of Mr. Justice Buford that the Board of Plumbing Commissioners was authorized by the Act to " 'establish, adopt, promulgate and put into effect a code governing the installation of plumbing' and to 'make such rules and regulations * * * as it may consider necessary to the proper performance of its duties.' " It was held that the statute was too vague and incomplete as a law in itself to become the vehicle for the authorization of the administrative commission to proceed to establish, adopt and promulgate the code, although the Act directed that in adopting the code the "basic principles adopted by the sub-committee on plumbing of the Building Code Committee of the United States Department of Commerce" as shown in a certain report, with such additions as local climatic and other conditions may require, should be used.

The fault that the Court found with this Act was that the

limitations within which delegated powers to the Commission were to be exercised were too indefinite and vague; that because of such talk of definite limitations the "scope of the field to be covered by the purposed code" was not defined, so that the Commission without any definite limitations upon the scope of its rule making power might attempt to enforce regulations beyond the legitimate and plainly designated general purpose of the Act.

Now does that criticism justly lie against the Act under consideration in this case? Counsel says the fault lies in the ninth section of the Act, which relates to the filing of applications with the Secretary-Treasurer of the Board by persons desiring to practice dentistry and which requires such application to be in writing accompanied by proof that the applicant is at least twenty-one years old and of good moral character and that he "shall also file his diploma or certificate of graduation from an accredited dental college as defined by the National Association of Dental Examiners," and that the application must be on the form provided by the Board and verified by oath of the applicant.

In the case of McSween v. State Live Stock Sanitary Board of Florida, 97 Fla. 750, 122 Sou. Rep. 239, the doctrine, announced in Lainhart v. Cotts, *supra,* was quoted with approval, that the "determination of facts upon which the validity or constitutionality of statutes may depend is primarily for the legislature, the general rule being that the courts will acquiesce in the legislative decision, unless it is clearly erroneous, arbitrary, or wholly unwarranted."

It is not an extension of the rule to say that when a law rests for its validity upon the existence of certain conditions, or the operation of some phase of it depends on the existence of facts necessary to be determined by the Legislature before the Act could be validly enacted, the presumption

.exists that the Legislature has determined the fact prior to the enactment as a reason for it. See 59 C. J. 1008.

Should the quoted clause in Section Nine of the Act be interpreted as counsel insist and say that it "operates to delegate the authority to regulate the admission to practice dentistry in this State to a Board known as a National Board of Dental Examiners" and thus destroy the validity of the Act, or should it be construed in such way that the Act can be upheld? That is to say, that the authority to prescribe the preliminary qualifications to be possessed by persons making applications to be examined is retained within the provisions of the Act and not delegated to a Board whose rules may be changed at will in the matter of defining an accredited dental college from which the applicant is required to furnish a diploma?

In the first place the clause is not an ambulatory one. It is not reasonably susceptible to the interpretation that "accredited" colleges constitute a class of schools which change from day to day or at the caprice of a Board or Association of Dental Examiners. The clause should be given the meaning which will save it from condemnation. The Legislature is presumed to have been in possession of the knowledge or information as to what dental colleges had been classed by the National Association of Dental Examiners as accredited. It is presumed to have been informed as to the meaning of the word "accredited" and its significance in this connection to the practice of dentistry in this State. Also that the Legislature has power to prescribe such educational attainments on the part of all applicants as will reasonably accomplish the purpose of the Act, Being thus informed and possessing the power it directed by that clause that a person desiring to practice dentistry shall attach to his written application a diploma or certificate of graduation

from a college which may be classed as accredited "as defined," that is, as that term is defined, that is to say, as that term has already been defined by the National Association of Dental Examiners.

Even if it should be maintained that the term "as defined" means a list of colleges as already named by the National Board there would be no objection to the Act. In such case the conditions with which the applicant must comply would be definite, certain and not unreasonable. To sustain the petitioner's contention we should be compelled to write into the Act after the words "as defined" the following "or that may at any time hereafter be defined." But that, of course, would not be permissible.

The term "as defined" if relating to colleges has reference to certain colleges then on the list as "accredited" colleges, or if it refers to the term "accredited" then it is left within the powers of the State Board of Examiners to decide whether the college from which the applicant produces his diploma measures up to the definition of the term "accredited" as defined by the National Board.

So we think the act is not susceptible to the criticism that it attempts to delegate undelegable legislative powers.

All other attacks upon the Act have been considered and disposed of already in the opinion.

The judgment of the court is reversed and the petitioner ordered to be remanded to the custody of the sheriff.

DAVIS, C. J. and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and BUFORD, J. J., concur in the opinion and judgment.