285 So.2d 386 (1973)
FLORIDA WELDING & ERECTION SERVICE, INC., a Florida Corporation, Appellant,
v.
AMERICAN MUTUAL INSURANCE COMPANY OF BOSTON, a Massachusetts Corporation, Appellee.
No. 41049.
Supreme Court of Florida.
November 7, 1973.
*387 Eli H. Subin, of Roth, Segal & Levine, Orlando, for appellant.
Morton Kosto, Orlando, of Feibelman, Friedman, Britton & Stettin, Fort Lauderdale, for appellee.
Raymond Ehrlich, Jacksonville, for American Mutual Ins. Alliance, as amicus curiae.
DEKLE, Justice.
This is an appeal from a summary final judgment entered by the Orange County Circuit Court for American Mutual Insurance Company of Boston, the plaintiff below, upon a claim for insurance premiums. In so doing, the Circuit Court passed upon the constitutionality of Fla. Stat. §§ 627.091 and 627.291(2), F.S.A. We therefore have jurisdiction pursuant to Fla. Const. Art. V, § 3(b)(1), F.S.A. (1973).
The claim for premiums on workmen's compensation policies arose from the company's mistake in issuing one policy with incorrect experience modification factors.[1] There is a direct relationship between the experience modification factors and the amount of premium, and in this case the company erroneously billed its insured, the appellant, for less premium than would have been due for the period because it mistakenly used a lower experience modification factor than it should have used. This mistake, however, does not avail the appellant inasmuch as § 627.072 compels the application of factors which must be applied in the determination of rates as to all insureds. This is necessary to insure that there is no discrimination between insureds, much as we know to be the case in the instance of tariffs in the shipment of merchandise where uniform rates are required to be charged to avoid discrimination. In the fixing of rates under § 627.072 the factors set forth there include that which was required to be considered here, namely, the "past and prospective loss experience."
*388 The insured challenges the constitutionality of the "rating" statutes involved, in two respects:
(1) § 627.091 allows, but does not require, insurance companies to delegate to a licensed rating organization, the responsibility for filing with the Insurance Commissioner the company's manuals of classifications, rules and rates;
(2) § 627.291(2) delegates to such a rating organization, the requirement to provide a means for complaints to be heard upon the manner that the rating system filed under the preceding § 627.091 has been applied.
Appellant contends that these two sections of the statute are an unlawful delegation of legislative power, and a denial of due process and equal protection under the state and federal constitutions.[2]
The constitutional provision vesting legislative power (Fla. Const. art. III, § 1) requires of course that only the Legislature shall establish the legislative policies and standards of the state. It is also clear, however, that the Legislature may delegate to authorized officials and agencies the authority to promulgate subordinate rules within prescribed limits and to determine facts to which the established policies of the Legislature are to apply.[3] What the Legislature may not delegate is the power to enact laws or to declare what the law shall be or to exercise unrestricted discretion in applying the law.[4]
Fla. Stat. § 627.091, F.S.A., when read in conjunction with Fla. Stat. § 627.072,[5] F.S.A., is not an improper delegation of legislative power because, through Section 627.072, the necessary guidelines and standards to be followed in establishing rates and rating plans have been provided by the Legislature.
The second constitutional attack, also with regard to an alleged improper delegation of legislative power, is the above-noted attack on § 627.291(2) which provides for an appeal from the rates applied under the rating law in the other sections hereinabove set forth. It provides as follows:
"(2) As to workmen's compensation ... every rating organization and every insurer which makes its own rates shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or insurer fails to grant or rejects such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or insurer on such request may, within thirty days after written notice of such action, appeal to the department, which, after a hearing held upon not less than ten days' written notice to the appellant and to such rating organization or insurer, may affirm or reverse such action." (Emphasis added)
Section 627.291(2) is challenged as an improper legislative grant to the rating agency of "unlimited discretion" without guidelines to determine how and when an aggrieved party may be heard. We cannot *389 agree. The requirement of the statute for "reasonable means" to be heard is sufficient. Whether the means so provided thereunder are "reasonable" is open to factual challenge and this is not presented here. Moreover, the use of a licensed rating organization by an insurance company is optional, thus preserving the alternative right of direct filing of rate classifications to apply, and then pursuing direct appeal to the Insurance Commissioner and thereafter to the district court. §§ 627.371, 627.391.
The further provision of § 627.291(2) challenged is its provision that if the rating organization for the insurer "fails to grant or rejects such request within thirty days after it is made, the applicant may proceed in the manner as if his application had been rejected." Actually, this is a safeguard favorable to the applicant to prevent delay in a decision, by the agency's indecision, and assures prompt disposition, allowing the applicant (appellant) to appeal direct to the department for a decision as early as 30 days. This is a very definite control or "guideline" assuring constitutional safeguards for a prompt hearing upon notice. Such safeguard does not mean that the applicant is "out" upon the mere passage of 30 days. It simply gives him the privilege of expediting his appeal within the 30 days, no matter the inaction of the agency in not acting promptly upon the complaint or in earlier rejecting it. The next sentence in the statute assures this:
"If the rating organization or insurer fails to grant or rejects such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or insurer on such request may, within thirty days after written notice of such action, appeal to the department... ." (emphasis added)
The statute § 627.291(2) meets constitutional muster. It follows that appellant was required to pursue its administrative remedy under these valid statutes just as in any other administrative matter, and the able chancellor was eminently correct in so ruling.
Appellant's contention that he had no express notice of the right to pursue the administrative remedy above set forth in the statute, either expressly mentioned in his policy or by some other notice, is contrary to notice principles. The appellant, like all others affected by the statute, is upon notice of the statutory provisions in this regard. Notice in such a statute is sufficient to meet the constitutional requirement of due notice without the necessity of some express notice of the provision of the law where the matter is expressly covered by statute in this respect.
Actually, one of the sections of the insurance rating law which appellant attacks, namely, § 627.091, as well as the sections referred to in appellee's response as allegedly providing the required remedy by appellee, to-wit: §§ 627.181 and 627.281, all appear to refer to the initial filing and any modifications of the manuals and basic data from which the premium rates are derived. This is a separate preliminary "system" of establishing the correct data for arriving at rates and is subject to appeal or review by an aggrieved party who quarrels with the correctness or sufficiency of it. The matter of the actual application of this material or "rate data" to arrive at the premium charged, appears to have an adequate basis for administrative review under subsequent § 627.371, the language of which is generally the same, however, insofar as the method and times of review are concerned, as provided in the section under attack, § 627.291(2). Section 627.371 expressly refers to a review and appeal by "any person aggrieved by any rate charged... ."
Where a method of appeal from an administrative ruling has been provided, such method must be followed to the exclusion of any other system of review. *390 Where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act.[6]
The summary judgment was expressly based upon appellant's failure to exhaust administrative remedies under the statute, thereby precluding a challenge of the billed rates in the circuit court proceeding. Money judgment was accordingly correctly entered against the appellant.
Affirmed.
CARLTON, C.J., and ROBERTS, ERVIN, ADKINS and BOYD, JJ., concur.
McCAIN, J., dissents with opinion.
McCAIN, Justice (dissenting):
American Mutual originally issued policy FWC XXXXXX-XX-X for the period beginning January 1, 1967, and ending January 1, 1968, to Florida Welding & Erection Service, the defendant below. The premium of $9,755.31 for this policy was billed to Florida Welding. This premium was based upon an experience modification factor[1] of 1.11% promulgated by the Florida Compensation Rating Bureau. Pursuant to the terms of the policy, this premium was recomputed on the anniversary rating date, January 23, 1967, to reflect an experience modification factor of 1.11% for the period from January 1, 1967, to January 23, 1967, and 1.41% for the period from January 23, 1967, to August 1, 1967. This increased the premium by $2,374.76 to $12,130.07.
The policy was cancelled and rewritten on August 1, 1967, as FWC XXXXXX-XX-X. The new policy included premiums due for the period August 1, 1967 to August 1, 1968, and was based upon an incorrect experience modification factor of 1.11%. American Mutual changed these premiums to reflect what was thought to be the correct factor of 1.11% for the period from August 1, 1967, to January 23, 1968, and 1.26% for the period from January 23, 1968, to August 1, 1968. Florida Welding was billed $24,624.67, based upon these factors. This figure also proved to be partially incorrect and American Mutual made one final change by correcting the factor for the period from August 1, 1967, to January 23, 1968 from 1.11% to 1.41% and Florida Welding was billed an additional premium of $3,630.07. In effect, Florida Welding was originally billed for premiums due for the year beginning August 1, 1967, based upon an incorrect factor of 1.11% and later billed for premiums due for the same period based upon the correct factor of 1.41%.
In summary, the correct rating factors and premiums due were as follows:

January 1, 1967 to January 23, 1967 ... 1.11%
January 23, 1967 to August 1, 1967 .... 1.41% .. $12,130.07
August 1 to January 23, 1968 .......... 1.41%
January 23, 1968 to August 1, 1968 .... 1.26% .. 28,254.74
 __________
 Total premiums due ......................... $40,384.81
 Total premiums paid ........................ 29,895.96
 __________
Amount claimed to be due ....................... $10,488.85

The rates in question were promulgated pursuant to Fla. Stat. § 627.091, F.S.A. Subsection 1 of this provision requires that all workmen's compensation insurers file with the Department of Insurance "every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use." Subsection 4 provides, in part:
"An insurer may satisfy its obligation to make such findings by becoming a member of, or a subscriber to, a licensed *391 rating organization which makes such filings, and by authorizing the department to accept such filings in its behalf... ."
American Mutual, under authority of the above provision, is a member of the National Council on Compensation Insurance; a licensed rating organization in Florida. Pursuant to an "Experience Rating Plan", which was approved by the Department and the State Treasurer, the National Council filed the required information with the Department subject to modification by the experience modification factor to be promulgated by the Florida Compensation Rating Bureau. Under this plan, the Bureau established the modification factor of 1.41% for the period from January 23, 1967, to January 23, 1968.
While the record is not clear, it appears that the reason for incorrectly billing Florida Welding based upon a 1.11% factor is that American Mutual hoped that the 1.41% factor was negotiable with the Bureau and could be lowered. When American Mutual learned that the factor was not negotiable it billed Florida Welding for the additional premium due and was refused payment. The instant suit followed.
The cause did not come to trial, for the trial judge granted final summary judgment in favor of American Mutual upon the ground that Florida Welding had failed to exhaust its administrative remedies as provided by Fla. Stat. § 627.291(2), F.S.A., and accordingly could not contest the ratings of the Bureau in the suit. In a separate order the trial court ruled upon the constitutional issues raised by Florida Welding. The latter issues were: (1) whether Fla. Stat. §§ 627.091 and 627.291(2), F.S.A., violate Fla. Const., Article III, § 1, and (2) whether Fla. Stat. § 627.291(2), F.S.A., violates Fla. Const., Article I, §§ 4 and 9, and the due process and equal protection clauses of the 14th amendment to the United States Constitution. The trial court ruled upon these issues as follows:
"I find that the defendant is charged with notice of the law and therefore cannot complain that it was not given fair notice of its right to appeal the disputed workman's compensation premium rates in this case. Its failure to follow the administrative review procedures has precluded it from contesting the correctness of the premium and rates in this Court. Nor do I find that the delegation of the rate setting and initial review procedures to a private rating bureau violates Article III, Section 1 of the Constitution."
As to the first constitutional issue, it is the position of Florida Welding that both Fla. Stat. § 627.091 and 627.291(2), F.S.A., constitute an unlawful delegation of legislative power in violation of Fla. Const., Article III, § 1, which provides in pertinent part:
"The legislative power of the state shall be vested in a legislature of the State of Florida... ."
It is clear that this provision requires that the Legislature alone establish the policies and standards of the State. But it is also clear that the Legislature may delegate to authorized officials and agencies the authority to promulgate subordinate rules within prescribed limits and to determine facts to which the established policies of the legislature are to apply.[2] What the Legislature may not delegate is the power to enact laws, or declare what the law shall be, or to exercise unrestricted discretion in applying the law.[3]
*392 Fla. Stat. § 627.091, F.S.A., when read in conjunction with Fla. Stat. § 627.072,[4] F.S.A., is not an improper delegation of legislative power because, through Section 627.072, the necessary guidelines and standards to be followed in establishing rates and rating plans have been provided by the Legislature. This is not true of Section 627.291(2).
Section 627.291(2) provides, in part:
"As to workmen's compensation ... every rating organization and every insurer which makes its own rates shall provide within this state reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or insurer fails to grant or rejects such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or insurer on such request may, within thirty days after written notice of such action, appeal to the department, which, after a hearing held upon not less than ten days' written notice to the appellant and to such rating organization or insurer, may affirm or reverse such action." (Emphasis added)
While this provision attempts to establish a means whereby the insured may contest an established rate or rating plan, it leaves to the Bureau, or any other licensed rating organization, the authority to exercise virtually unlimited discretion in determining how and when those aggrieved by application of the rating system may be heard.
The only guideline established by the Legislature for the method of hearing is that the hearing be "reasonable". The only guideline as to when the hearing is to be held is that if no action is taken by the Bureau within thirty days after application, the aggrieved party may treat its application as having been rejected and appeal to the Department of Insurance. I find that these guidelines do not meet the requirements of Fla. Const., Art. III, § 1, and therefore constitute an unconstitutional delegation of legislative power.
Therefore, because Fla. Stat. § 627.291(2), F.S.A., is unconstitutional, it is unnecessary to discuss Florida Welding's second constitutional issue. American Mutual's final point, that there are no material issues of fact, is without merit. There are five issues of law and seven issues of fact as stipulated by both parties on April 6, 1971.
Accordingly, the judgment below should be reversed and the cause remanded to the Circuit Court for further proceedings consistent herewith.
NOTES
[1] An experience modification factor is a variation from the average premium charged by a particular insured's industry which expresses the insured's risk experience over a three year period above or below the average.
[2] Fla. Const. art. III, § 1; art. I, §§ 4 and 9; U.S.Const. 14th amd.
[3] Delta Truck Brokers, Inc. v. King, 142 So.2d 273 (Fla. 1962); Husband v. Cassel, 130 So.2d 69 (Fla. 1961); Attwood v. State, 53 So.2d 825 (Fla. 1951); Pridgen v. Sweat, 125 Fla. 598, 170 So. 653 (1936); Spencer v. Hunt, 109 Fla. 248, 147 So. 282 (1933).
[4] Husband v. Cassel, supra footnote 3; Spencer v. Hunt, supra footnote 3; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789 (1919).
[5] Fla. Stat. § 627.072, F.S.A., is a reenactment, with some modifications, of Fla. Stat. § 627.081, F.S.A., eff. Oct. 1, 1967.
[6] Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla. 1961); City of Coral Gables v. Sakolsky, 215 So.2d 329 (Fla.App.), cert. den., 225 So.2d 526 (Fla. 1969).
[1] According to the deposition of Robert E. Ferguson, manager of the Florida Compensation Rating Bureau, an experience modification factor is a variation from the average premium charged by a particular insured's industry which expresses the insured's risk experience over a three year period above or below the average.
[2] Delta Truck Brokers, Inc. v. King, 142 So.2d 273 (Fla. 1962); Husband v. Cassel, 130 So.2d 69 (Fla. 1961); Attwood v. State, 53 So.2d 825 (Fla. 1951); Pridgen v. Sweat, 125 Fla. 598, 170 So. 653 (1936); Spencer v. Hunt, 109 Fla. 248, 147 So. 282 (1933).
[3] Husband v. Cassel, supra footnote 2; Spencer v. Hunt, supra footnote 2; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789 (1919).
[4] Fla. Stat. § 627.072, F.S.A., is a reenactment, with some modifications, of Fla. Stat. § 627.081, F.S.A., effective October 1, 1967.