285 So.2d 598 (1973)
STATE of Florida ex rel. Robert L. SHEVIN, Attorney General, Appellant,
v.
METZ CONSTRUCTION COMPANY, INC., a Florida Corporation, et al., Appellees.
No. 42947.
Supreme Court of Florida.
November 14, 1973.
*599 Robert L. Shevin, Atty. Gen., and Jerry E. Oxner, Asst. Atty. Gen., for appellant.
William P. O'Malley, Clearwater, for appellees.
CARLTON, Chief Justice.
The Attorney General was permitted to intervene in this cause for purposes of appeal (279 So.2d 836) because the final judgment of the trial court dismissing a petition for writ of mandamus held that the last sentence in Section 4(3) of Chapter 71-172, Laws of Florida, was unconstitutional. We reverse.
Appellees, Metz Construction Company, Inc. and Nationwide Land Corporation, filed the petition for writ of mandamus, seeking to compel appellee Kerwin, the Building Official for the City of Safety Harbor, to issue them building permits. The permits had been requested for the construction of "closed-system", factory-built housing in an area zoned by the city as R-2 for single-family dwellings. The permits were denied on the basis of the city zoning ordinance, which prohibited such closed-system buildings in R-2 areas. The petitioners contended that Chapter 71-172, Laws of Florida, prevented municipalities from discriminating in their zoning requirements between factory-built housing and that constructed in a conventional manner.
Appellee Kerwin moved to dismiss the petition for writ of mandamus on the ground that the pertinent portion of Chapter 71-172 was unconstitutional. The trial court dismissed the petition, holding that "... the last sentence of Section 4(3) in Chapter 71-172, Laws of Florida, fails to meet the requirements of the Florida Constitution Article 3, Section 6 (1968) in that the Title of the Act does not embrace sufficient mention of the far reaching and harsh innovations of the sentence in question."
Chapter 71-172 is a comprehensive act relating to factory-built housing and establishing a department of community affairs to inspect, approve, and regulate such housing. The title to the act is as follows:
"An Act relating to factory built housing; providing for the duties and powers of the department of community affairs; providing for the inspection and approval of factory built housing; providing penalties; providing injunctive relief; providing an effective date."
Section 4(3) of the act provides:
"(3) The department shall enforce every provision of this act and the regulations adopted pursuant thereto; provided that local land use and zoning requirements, local fire zones, building set-back, side and rear yard requirements, site development and property line requirements, subdivision control, onsite installation requirements, as well as the review and regulation of architectural and aesthetic requirements are hereby specifically and entirely reserved to local jurisdictions. Such local requirements and regulations and others which may be enacted which *600 relate to transportation, erection, and use, shall be reasonable and must be uniformly applied and enforced without distinctions as to whether such housing is factory-built or built in a conventional manner."
Appellee Kerwin contends that the last sentence above-quoted was properly held to be unconstitutional because Chapter 71-172 did not "embrace but one subject and matter properly connected therewith... ." Article III, Section 6, Florida Constitution. Alternatively, he contends that if the matters dealt with in the offending sentence are properly connected with the regulation of factory-built housing the sentence must nevertheless be stricken because these matters are not expressed in the title to the act. Id.
In deciding whether either of these contentions has merit, our first objective must be to determine the intent of the Legislature in including Section 4(3) in the Act. If, for example, Section 4(3) is interpreted as requiring all municipalities to restructure their existing land use plans, zoning ordinances, building requirements, and other regulations which may relate to factory-built housing, then we would agree with the trial judge that these requirements should have been expressed in the title of the Act. However, we cannot give that interpretation to Section 4(3). It is elementary that a statute is clothed with a presumption of constitutional validity, and if fairly possible a statute should be construed to avoid not only an unconstitutional interpretation, but also one which even casts grave doubts upon the statute's validity. E.g., Spencer v. Hunt, 109 Fla. 248, 147 So. 282 (1933). With respect to the sufficiency of the title to an Act, all the usual presumptions of validity apply, and we must assume that the Legislature intended to enact a valid law. See State ex rel. Flinck v. Canova, 94 So.2d 181 (Fla. 1957).
We have no difficulty in construing Section 4(3) of Chapter 71-172 as not requiring a complete review and revamping of all existing municipal ordinances and regulations of the types listed in that Section. The last sentence of the Section refers to requirements and regulations "which may be enacted", and prohibits any future discriminatory distinctions with respect to factory-built housing. We are of the opinion that, under this interpretation, the last sentence of Section 4(3) does concern matter properly connected with the subject of the Act.
In State ex rel. Buford v. Daniel, 87 Fla. 270, 99 So. 804, at 807 (1924), we said:
"While the title of an act is by the Constitution required to briefly express the subject of the enactment, it need not state matters properly connected with such subject that are embraced in the body of the law; and the language used in expressing the subject of the enactment is within the legislative discretion. If the language of the title, considered with reference to the legislative intent as shown by the purpose and object of the act, may by any fair intendment cover the subject of the act, the courts will not because of an asserted defective title refuse to give effect to any matter contained in the body of the enactment that is germane to or properly connected with the subject of the law, where the title is not so worded as to mislead an ordinary mind as to the real purpose and scope of the particular enactment. A wide latitude must of necessity be accorded the Legislature in its enactments of law; and it must be a plain case of violating the requirements of the organic law as to titles of acts before the courts will nullify statutes or portions thereof as not being within the purpose and scope of the subject as expressed in the title and of `matter properly connected therewith.'"
The Legislature chose to title this Act very broadly as one relating to factory-built housing and establishing a department to regulate such housing. Certainly any ordinary mind would expect that the Act would contain corresponding restrictions on the powers of municipalities to regulate the same type of housing. One such restriction *601 included here, germane to the broad subject of factory-built housing, is that ordinances, regulations, and requirements in the areas listed may not discriminate against such housing. A municipality, after Chapter 71-172 was passed, could not, for example, amend its zoning classifications to distinguish between factory-built and other types of housing.
Since we find the last sentence of Section 4(3) of Chapter 71-172, as herein interpreted, to be not unconstitutional, the order of the trial court dismissing the petition for writ of mandamus on that basis is hereby reversed. This cause is remanded to the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, for further proceedings not inconsistent herewith.
It is so ordered.
ROBERTS, ERVIN, ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.