335 So.2d 802 (1976)
James E. CARTER and Employers Surplus Lines Insurance Company, Petitioners,
v.
Nellie Mae SPARKMAN, Respondent.
No. 48039.
Supreme Court of Florida.
May 5, 1976.
Rehearing Denied August 3, 1976.
*803 Heskin A. Whittaker, of Whittaker, Pyle & Stump, Orlando, for petitioners.
Walter Stockman of Stockman & Grass, Cocoa Beach, for respondent.
Robert L. Shevin, Atty. Gen., and Barry Silber and Donald D. Conn, Asst. Attys. Gen., for amicus curiae.
John E. Mathews, Jr., and Jack W. Shaw, Jr., of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, and John E. Thrasher, Daytona Beach, for the Fla. Medical Ass'n, amicus curiae.
ROBERTS, Justice.
This cause came to us on certificate of questions from the Circuit Court in and for Brevard County. However, since the trial court had already ruled on the questions posited[1] by it, this Court chose to treat the certificate as a petition for writ of certiorari pursuant to Article V. Section 3(b)(3) and Article V, Section 2(a), Constitution of Florida. Cf. Burnsed v. Seaboard Coastline Railroad Company, 290 So.2d 13 (Fla. 1974).
The facts pertinent to the disposition of this cause, contained in the Circuit Court's certificate, are as follows:
"1. On July 18, 1975, Plaintiff filed suit in this Court against Defendants, JAMES E. CARTER, and ARGONAUT INSURANCE COMPANY, said suit against Defendant CARTER being based on the alleged negligence of said defendant in treating Plaintiff for a fracture of the proximal head of the fifth metatarsal bone of her right foot.
"2. On July 31, 1975, Defendant CARTER moved this Court to dismiss *804 said suit on the grounds that this Court lacked jurisdiction of the subject matter of the suit and of Defendant ARGONAUT, alleging inter alia that Plaintiff had not complied with § 5 and 6 of Chap. 75-9, Fl.Sts. (1975) entitled `Medical Malpractice Reform Act', which became effective on July 1, 1975 creating new § 768.133 of the Florida Statutes, which statute mandatorily requires cases such as the instant case to be filed pursuant to such newly created statute as a Medical Liability Mediation Claim, to be heard first before a liability mediation panel whose presiding member and judicial referee shall be a circuit judge; that Plaintiff had not complied with such newly created statute by first filing her claim thereunder. Defendant CARTER further indicated his special appearance to contest the jurisdiction of this court over Defendant ARGONAUT, by alleging that Defendant CARTER's insurer was in fact EMPLOYERS SURPLUS LINES INSURANCE COMPANY.
"3. On August 8, 1975, Defendant's Motion to Dismiss was heard before this Court. Plaintiff opposed Defendant's Motion on the grounds that the newly created statute was unconstitutional under Amendments 5 and 14 of the United States Constitution; Article 1, §§ 2, 9 and 21 of the Florida Constitution, and Article 5, §§ 2 and 13 of the Florida Constitution specifying that the newly created statute deprived Plaintiff of the due process of the laws, and of the equal protection of the laws, and that the newly created statute expressly and illegally controverts the 1968 holding of the Florida Supreme Court in the case of Shingleton vs. Bussey, 223 So.2d 713. It was Plaintiff's position that:
"a. The new statute, making it mandatory for a Plaintiff to first submit to mediation before filing a suit for relief in a court of law, while at the same time a defendant physician was allowed the option of submitting his defense to such claim to mediation (§ 5, Chap. 75-9, Laws of 1975, 4th Legislature of Florida; Fl. St. 768.133(2) (emphasis supplied), was a denial of due process and the equal protection of the laws under the United States and Florida Constitutions.
"b. The requirement of the new statute that in any civil medical malpractice action, the trial on the merits shall be conducted without reference to insurance, insurance coverage or joinder in the suit of the insurer as a co-defendant, was likewise unconstitutional under the above cited constitutional references.
"c. The new statute did not treat Plaintiff and Defendant herein equally thereby denying Plaintiff her basic rights under Article 1, § 2 of the Florida Constitution.
"d. The new statute restrained Plaintiff from timely access to the Courts thereby violating Article 1, § 21 of the Florida Constitution."
The trial court denied the motion to dismiss, agreed with plaintiff's contentions, and specifically found that Section 768.133, Florida Statutes (Chapter 75-9, § 5, Laws of Florida) is unconstitutionally violative of Amendments 5 and 14 of the Constitution of the United States, Article 1, and Sections 2 and 9 of the Constitution of Florida in that it denies the plaintiff her basic constitutional rights to due process and equal protection of the law; that said section constitutes class legislation designed solely for the defendant physicians in suits for their malpractice based on negligence by requiring plaintiff to first submit to mediation before filing a suit for damages in a court of law while at the same time the physician is allowed the option of submitting his defense to such claim by not being required to plead to such a claim; that it violates Sections 2 and 13, Article V, Constitution of Florida, in that the Legislature in creating said statute infringed on the constitutional rights of the Supreme Court to regulate practice and procedure in the courts of Florida. Section 768.133 as contained in Chapter 75-9, Section 5, Laws of Florida, with which the trial court is concerned, sub judice, also provided:
"(10) In the event any party rejects the decision of the hearing panel, the *805 claimant may institute litigation based upon the claim in the appropriate court. Furthermore, in any civil medical malpractice action, the trial on the merits shall be conducted without any reference to insurance, insurance coverage or joinder in the suit of the insurer as a co-defendant."
However, apparently pursuant to Section 11.242(5), the Statutory Revision Division transferred this Section to Section 768.134, Florida Statutes.
Although we find that the several constitutional attacks on the validity of Sections 768.133 and 768.134(1), Florida Statutes, relative to medical liability mediation panels are without merit, we find that the contention that the act violates constitutional equal protection guarantees merits discussion and necessitates an effective construction of the act so as to resolve the doubts of constitutionality in favor of the act.
It is incumbent on this Court when reasonably possible and consistent with constitutional rights to resolve all doubts as to the validity of a statute in favor of its constitutional validity and if possible a statute should be construed in such a manner as would be consistent with the constitution, that is in such a way as to remove it farthest from constitutional infirmity.
In oral argument much was said contending that the physician under the Florida Medical Consent Law has the "best of two worlds" in that he has a choice between participating in the administrative hearing or not participating; whereas, the plaintiff who is claiming damages by reason of injury, death, or monetary loss on account of alleged malpractice by any medical or osteopathic physician, hospital, or health maintenance organization against whom he believes there is a reasonable basis for a claim, must submit his claim to an appropriate medical mediation panel before he may file a claim in the state courts. If both plaintiff and physician participate in the mediation proceedings, the result becomes admissible into evidence (Section 768.134(2), Florida Statutes), but the statute is silent as to the admissibility of non-participation by the physician. Contention was made that such an arrangement violates the equal protection clause of the Constitutions of the United States and of Florida. We agree and construe the statute to mean that in the event the physician fails to participate in the administrative hearing after plaintiff has done so, such fact is admissible into evidence in any subsequent civil medical malpractice trial. We realize that certain items of expense in relation to the mediation attempts will be incurred, but it would naturally follow that such expenses to the extent of reasonableness would become a part of the costs of the judicial proceedings, taxable against the losing party.
Although courts are generally opposed to any burden being placed on the rights of aggrieved persons to enter the courts because of the constitutional guaranty of access, there may be reasonable restrictions prescribed by law. Typical examples are the fixing of a time within which suit must be brought, payment of reasonable cost deposits, pursuit of certain administrative relief such as zoning matters or workmen's compensation claims, or the requirement that newspapers be given the right of retraction before an action for libel may be filed.
Cases are legend which hold that the police power of the state is available in the area of public health and welfare, and we must, therefore, consider matters pursued under the law sub judice as being separate and distinct from those generally flowing from the marketplace. At the time of enactment of the legislation in question sub judice, there was an imminent danger that a drastic curtailment in the availability of health care services would occur in this state. The Legislature's recognition of the crisis in the area of medical care and the need for legislation for the benefit of public health in this state is evidenced by the Preamble to Chapter 75-9, Laws of Florida, as follows:
"WHEREAS, the cost of purchasing medical professional liability insurance *806 for doctors and other health care providers has skyrocketed in the past few months; and
"WHEREAS, it is not uncommon to find physicians in high-risk categories paying premiums in excess of $20,000 annually; and
"WHEREAS, the consumer ultimately must bear the financial burdens created by the high cost of insurance; and
"WHEREAS, without some legislative relief, doctors will be forced to curtail their practices, retire, or practice defensive medicine at increased cost to the citizens of Florida; and
"WHEREAS, the problem has reached crisis proportion in Florida, NOW THEREFORE,"
The Legislature felt it incumbent upon itself to attempt to resolve the crisis through exercise of the police power for the general health and welfare of the citizens of this State and accordingly enacted Chapter 75-9, Laws of Florida, to effectuate that purpose. The statutes involved here deal with matters related directly to public health and obviously have for their purpose an effort to have the parties mediate claims for malpractice thereby reducing the cost of medical malpractice insurance and ultimately medical expenses.
Even though the pre-litigation burden cast upon the claimant reaches the outer limits of constitutional tolerance, we do not deem it sufficient to void the medical malpractice law.
By Section 768.133(10) of Chapter 75-9, Laws of Florida,[2] which in relevant part provides:
"Furthermore, in any civil medical malpractice action, the trial on the merits shall be conducted without any reference to insurance, insurance coverage, or joinder of an insurer as a co-defendant in the suit."
The Legislature intended to bar only "any reference" to the joinder of insurers rather than the joinder itself.
"References" to insurance or insurers during the course of trial is a purely procedural matter having to do with the conduct of trial proceedings.[3] To the extent the Legislature has attempted to control "references" during the course of trial in this provision, it has acted beyond its power.[4]
In view of the apparent wisdom of continuing the policy expressed in the questionable portion of this statute, we adopt the substance of this portion of Section 768.134(1), Florida Statutes (1975), as a rule of procedure for all medical malpractice trials conducted or in process under the statute.
"Rule 1.450(e)  In any civil medical malpractice action, the trial on the merits shall be conducted without any reference to insurance, to insurance coverage, or to the joinder of an insurer as co-defendant in the suit."
Having carefully considered all other points on appeal, we find them to be without merit.[5]
Accordingly, we hold that Sections 768.133 and 768.134, Florida Statutes, both being progeny of Chapter 75-9, Laws of Florida, as constructively construed are constitutional. The order of the trial court is reversed and the cause is remanded for proceedings consistent herewith.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG and HATCHETT, JJ., concur.
*807 ENGLAND, J., concurs with an opinion, with which OVERTON, C.J., and SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, Justice (concurring).
I concur with the majority in its general attempt to sustain the validity of the medical liability mediation panel statute against a variety of constitutional attacks. As my colleagues have done, I start with the notion that the Legislature is free to enact legislation necessary to deal with a public health crisis which it perceives within the state, and I accept fully as a premise to our review that the legislative solution to the perceived problem must be sustained if it is reasonably related to the purpose sought to be achieved. I have no problem in concluding that the Legislature quite reasonably approached the public health crisis in Florida by seeking to remove from the court system of the state those medical malpractice cases which are patently frivolous or clearly meritorious, and those which are subject to settlement after the parties have been brought together with a disinterested mediator. In fact, it is likely that the Legislature will more frequently attempt to accommodate the resolution of individual disputes without the use of the judiciary in areas where other forums or procedures can readily provide adequate dispute adjustment.[1]
Starting from these premises, I find it necessary to analyze separately the several arguments presented against the validity of Florida's medical liability mediation panel statute.
1. Sparkman argues the constitutional invalidity of this statute on the basis of the privileges and immunities clause and the due process clause of the Fourteenth Amendment to the United States Constitution. Her suggestion that the act abrogates her "privilege" to select a judicial forum rather than a mediation panel is not persuasive. A judicial forum is available after the mediation panel has completed its work or been terminated, and it has never been a constitutional "privilege" to file a lawsuit in a judicial tribunal in the first instance. See, among others, Florida Welding & Erection Svc., Inc. v. American Mutual Ins. Co., 285 So.2d 386 (Fla. 1973), requiring an exhaustion of administrative remedies. Nor can I accept Sparkman's suggestion that she has been denied "liberty ... without due process of law" because of the statutory restriction placed on malpractice suits prior to the institution of civil litigation in a court of law. The act specifically tolls the statute of limitation upon filing a claim with the mediation panel,[2] so there can be no loss of substantive rights to a plaintiff by reason of being required to go before a mediation panel before filing a complaint in court. In fact, under the statute, a claim is first filed with the mediation panel through the clerk of the circuit court,[3] the same place a complaint for any other lawsuit would normally be filed. The mediation panel becomes, in essence, akin to a required pre-trial settlement conference, a procedure common in many jurisdictions at the onset of litigation.[4]
2. Sparkman argues that the mediation panel denies her access to the courts of Florida in violation of Article I, Section 21 of the Florida Constitution. It troubles me that persons who seek to bring malpractice lawsuits must be put to the expense of two full trials on their claim, assuming the medical defendant chooses to put plaintiff to her proof before the panel. Obviously, *808 this procedure favors the medical defendant over a certain category of claimants who have limited resources. The only reciprocal benefit given plaintiffs under the statute is the ability to have the mediation panel's decision admitted into evidence at the later trial, a benefit which is only valuable if the plaintiff prevails before the mediation panel and in any event is fully equated by the reciprocal evidentiary right given to the defendant. While I find the inequity in this procedure harsh to a large and undefined class of litigants, I cannot in good conscience invalidate the statute on that basis. A disparity of resources has always been an imbalance in litigation which the courts are relatively powerless to adjust. Accordingly, although I might have preferred a more delicate balance for this type of litigation, I cannot conclude that the Legislature was unreasonable in setting a procedure for this class of lawsuit which has widened existing disparities.[5]
3. Sparkman argues that judges may not serve on medical mediation panels by reason of Article V, Section 13 of the Florida Constitution, directing that judges shall devote full time to their judicial duties. I do not agree. The responsibilities of judges assigned to mediation panels are "judicial duties" even though they are exercised before litigation is formally commenced with a "complaint". We essentially held as much when we adopted procedural rules for panel proceedings.[6] Moreover, since the institution of mediation panel proceedings is effected in the circuit court, I have no difficulty concluding that the statute does not thwart the constitutional directive regarding the activity of judges. There are undoubtedly areas and activities into which the Legislature may not thrust judges, but I view the role assigned in this legislation as being within constitutional tolerances.
4. Sparkman argues that the rules of procedure set out in Section 768.133, Florida Statutes (1975), are improperly adopted inasmuch as Article V, Section 2(a) of the Florida Constitution directs that "[t]he supreme court shall adopt rules for the practice and procedure in all courts... ." Carter counters this argument with reference to the near unanimous vote of both houses of the Legislature in adopting this statute, suggesting that the vote totals comply with the last sentence in Article V, Section 2(a), which allows the Legislature to repeal court-promulgated rules by general laws enacted by a two-thirds vote of the members of each house. I must agree with Sparkman that mere vote totals on the passage of legislation do not comply with the constitutional requirements for a repeal of court rules. To read the last sentence of Article V, Section 2(a) as authorizing a repeal of court-promulgated rules every time the Legislature votes by more than two-thirds of the members in both houses would create chaos. I cannot believe that the constitutional provision does not require knowledge and specific intent on the part of each chamber that their action is intended to override the judgment of the Supreme Court as to a specific rule of practice or procedure. See In re Clarification of Florida Rules of Practice and Procedure, 281 So.2d 204 (Fla. 1973). That requisite specificity of intent is required when the Legislature overrides the Governor's veto of any legislation or appropriation.[7] The separation of powers directed in Article II, Section 3 of the Florida Constitution, as well as the comity necessary to make the separation work effectively, necessitates an individual and direct vote to override a specific rule of court.
I must agree with Carter, however, that no problem under the constitutional scheme of rule-making is presented in this case. *809 Section 768.133(6) provides that procedural rules for mediation panels are to be established by this Court, and we have already adopted rules necessary to the conduct of these proceedings.[8] All legislative interest in matters of procedure having been deferred to the Court and the Court having acted, there can be no legislative incursion into the constitutional domain of the judiciary in the area of rulemaking.
OVERTON, C.J., and SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] This Court in Boyer v. Orlando, 232 So.2d 169 (Fla. 1970), declined to answer the question certified because the question certified by the Circuit Court had already been answered by it. This Court said, "Florida Appellate Rule 4.6 is not a substitute for appeal and questions already ruled upon below cannot be certified here."
[2] This provision now appears as Section 768.134(1), Florida Statutes (1975).
[3] Cf. In Re Clarification of Florida Rules of Prac. & Proc., 281 So.2d 204 (Fla. 1973).
[4] Article II, Section 3, Constitution of Florida; Article V, Section 2(a), Constitution of Florida.
[5] Cf. In Re Transition Rule 21, 316 So.2d 38 (Fla. 1975), Rule 1.010, Rules of Civil Procedure, Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla. 1974), Kluger v. White, 281 So.2d 1 (Fla. 1973).
[1] The Legislature has already diminished the role of the judiciary in Florida in the areas of marriage dissolution (Chapter 71-241, Laws of Florida, relating to "no fault" divorce), probate (Chapters 74-106 and 75-220, Laws of Florida adopting the Uniform Probate Code), and tort litigation arising from motor vehicle mishaps (Chapter 71-252, Laws of Florida, relating to "no fault" insurance). See also papers presented by Chief Justice Warren Burger and others at the National Conference on the Causes of Popular Dissatisfaction with the Administration of Justice, held in St. Paul, Minnesota on April 7-9, 1976.
[2] Section 768.133(4), Fla. Stat. (1975).
[3] Section 768.133(1)(b), Fla. Stat. (1975).
[4] See, for example, U.S.Dist.Ct.Rule 14 B (S.D.Fla.).
[5] My concerns are assuaged by the Court's determination that expenses incurred in the mediation panel proceeding, including the expert witness fees and travel expenses which are so costly in this type of litigation, are to be taxable costs on later trial if the plaintiff prevails.
[6] In re Transistion Rule 21, 316 So.2d 38 (Fla. 1975).
[7] Article III, Section 8(c), Florida Constitution.
[8] See fn. 6 above.