**AMERICAN HOME ASSURANCE CO., a New York corp., Plaintiff,**

v.

**THE PHINEAS CORP., a Florida corp., et al., Defendants.**

No. 8:02–CV–736–T–26EAJ.

United States District Court, M.D. Florida, Tampa Division.

Sept. 15, 2004.

Order Amending Judgment on Rehearing, Aug. 27, 2004.

Order Amending Judgment, Sept. 15, 2004.

---

Christopher Brian Lunny, Edward Bates Cole, Radey Thomas Yon & Clark, John Radey, Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, FL, for Plaintiff.

Steven Murray Weinger, Helena M. Tetzeli, Kurzban, Kurzban & Weinger, Miami, FL, for Defendant.

Arden M. Siegendorf, Miami, FL, pro se.

Steven J. Chackman, Bernstein & Chackman, P.A., Hollywood, FL, for Movant.

## ORDER.

LAZZARA, District Judge.

Before the Court is Plaintiff's Amended Motion for Summary Judgment (dkt.314) and Defendants' Response thereto (dkt.334). Also before the Court are the parties Statements of Unopposed Facts (dkts. 315 & 335) and supporting exhibits (dkts. 316–323 & 336–340)

### Background & Factual Allegations

Plaintiff, American Home Assurance Company ("American Home"), is an insurer authorized to provide workers' compensation and employer liability insurance in the State of Florida. Defendant, The Phineas Corporation ("Phineas"), is a large, multi-state organization that provides certain outpatient and in-patient assistance to its developmentally challenged clients. Phineas is essentially the parent company for all of the other Defendants in this action.

On or about July 15, 2000, American Home issued a workers' compensation and employer liability insurance policy (WC 477–98–14) ("the Policy") to Phineas for a coverage period of one year. Each of the Defendants was covered by the Policy and was provided a benefit by American Home. Defendants admit that the Policy is a valid and binding contract between American Home and Phineas. Pursuant to the Policy, American Home provided Defendants and their employees with certain coverages throughout the Policy term and otherwise performed in compliance with all material terms and requirements of the Policy. In accordance with the Policy, Phineas was obligated to remit estimated premiums to American Home, subject to a final audit by American Home to determine the total premium owed.

The Policy's first page (the "Information Page") shows that the "Estimated Premi-um" is calculated by means of "Classifications," "Code Number," "Estimated Total Remuneration," and a "Rate Per $100 of Remuneration." (*See* dkt. 240, tab B(1), p. AIG–PH 242; dkt. 41, ex. C.) The Policy's "Total Estimated Premium" is shown as $860,941.00. (*See id.* at p. AIG–PH 242.) The last page of the Policy is a "Binder Confirmation" showing a "total due" of $869,148.00 (the sum of $8,207.00 ("surcharge") and $860,941.00 ("premium")). (*See id.* at AIG–PH 289.) It is undisputed that Phineas fulfilled its obligation to pay $869,148.00, the estimated premium amount due under the "Binder Confirmation."

> However, the Policy later provides that: The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classification and rates that lawfully apply to the business and work covered under this policy. If the final premium is more than the premium you paid us, you must pay us the balance . . .. .

(*See id.* at AIG–PH 250–51.) The Policy further provides that Phineas is obligated to make certain documentation available for examination by American Home so that the final audit can be completed. In pertinent part, the Policy requires Phineas to:

> . . . let us [American Home] examine and audit all of your records that relate to this policy. These records include ledgers, journals, registers, vouchers, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. .

(*See id.*) The Policy was specifically approved by the State of Florida, Office of

Insurance Regulation ("OIR"), and was not subject to negotiation. (Dkt. 240, tab C, ¶ 4; Certified Copy of Policy Forms.)

After the Policy term expired, American Home, required an audit of Phineas to determine the final premium owed. On July 19, 2001, American Home's auditor, Nat Ardoin, communicated by phone with Michael Aguilar ("Aguilar"), the agent for Phineas and Defendant Sunrise Community, Inc.'s ("Sunrise") Risk Manager, to discuss the on-site audit. Mr. Aguilar was listed by Phineas as the "Inspection Contact" and "Accounting Records Contact" in Phineas' application for insurance from American Home. During the phone conversation, Mr. Aguilar informed American Home's auditor that he would produce a report containing all requested audit information once Sunrise's computer system became operational. Mr. Aguilar transmitted the system report to American Home's auditor via email on August 17, 2001. (Dkt.41, Ex. F) The report contained payroll information, employee job descriptions, classification codes, a breakdown of corporate officers, and other material data for final premium determination. (Dkt.41, Ex. G)

Based on the audit materials submitted, American Home determined that Defendants owed an additional earned premium of $2,418,648.00 under the Policy and therefore, demanded said amount from Phineas. Phineas has not paid any additional premium for the Policy. Defendants argue that American Home lulled them into the contract for insurance through fraudulent misrepresentations and a "lowball" quote. Defendants maintain that American Home misrepresented that they should only expect a slight increase in the final premium due to the 4% increase in payroll. Defendants take issue with the magnitude of the additional premium requested in light of American Home's al-

leged oral misrepresentations and conduct. They assert that the final premium requested is the result of improper changes to employee classifications, based on job duties and risk exposure, which were made without a formal endorsement.

### Plaintiff's Claims & Defendants' Counterclaims

American Home brings this action under the Court's diversity jurisdiction. In Count I of the Amended Complaint, American Home states a claim for breach of contract against Phineas for failing to fulfill its obligation of payment of the premium balance due under the Policy. Count Two also sets forth a claim of breach of contract against Phineas, but for submitting inaccurate and false audit materials. American Home raises a statutory claim for penalty, pursuant to Section 440.318, Florida Statutes, against Phineas and Sunrise in Count Three. This Count is also based on allegations that Defendants submitted false or inaccurate audit materials. In Count Four, American Home states a claim for unjust enrichment, arguing that Defendants voluntarily accepted and retained benefits under the Policy and have not compensated American Home for the fair value of services provided. Defendants' counterclaims include fraud (Count I), negligent misrepresentation (Count II), and recision (Count IV). These arguments are also raised in more detail in Defendants' Response to the Motion for Summary Judgment.

### Summary Judgment Standard

In the instant Motion, American Home seeks entry of summary judgment in its favor on Count I of the Amended Complaint and Counts I, II, and IV of Defendants' counterclaims, the granting of which will necessarily resolve all remaining issues in this case. Summary judgment is

appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Having done so, the Court now finds that Plaintiff is entitled to entry of final summary judgment in its favor and against Defendants.

### Discussion

#### Count I of the Amended Complaint: Breach of Contract Against Phineas

Count I of the Amended Complaint alleges that Phineas' failure or refusal to tender complete payment of the additional premium due is a substantial, material breach of the Policy. Phineas admits that the Policy is a valid and binding contract. (*See* dkt. 240, tab A, ¶ 35, and Tab I, ¶ 14.) The Policy's plain language, as previously set forth, and Florida law require American Home to conduct an audit and to calculate the final premium "to ensure that the appropriate premium is charged for workers' compensation coverage." § 440.381(3), Fla. Stat. (2000); F.A.C. Rule 4–189.003(4) (2000). Final premium must be based on actual, not estimated, payroll or remuneration paid during the Policy term and must be based on a lawful allocation of that payroll between classification code Numbers 8861 and 9110. (Dkt. 240, tab B(1) at p. 5); § 440.381, Fla. Stat. (2000); *see also* 1995 NCCI Basic Manual, Rule XV(A). After the policy term expired, American

Home requested materials from Phineas to conduct an audit and Phineas complied. American Home then verified the information, calculated the final premium owed under the Policy, and notified Phineas of that amount. The admittedly "binding" Policy expressly requires that "[i]f the final premium is more than the premium you [Phineas] paid to us [American Home], you must pay us the balance". (*See* dkt. 240, tab B(1) at AIG–PH 250.)

The undisputed evidence shows that American Home performed its calculation of the final premium in good faith and determined that Phineas owes an additional premium for the Policy in the amount of $2,340,661.00. (*See* dkt. 321, Affidavit of Douglas K. Anhorn.) The auditor, Douglas K. Anhorn, describes in his Affidavit American Home's audit procedures, the variables in the calculation, and the exact methodology used to arrive at the calculation of $2,340.661.00. (*See id.* at ¶ 13.) American Home used a detailed list of employees and regular and overtime pay provided by Phineas to calculate the final premium. (*See* dkt. 41, ex, G; Anhorn Affidavit, ¶¶ 6 & 11.) After payroll was known, the next step in the calculation of final premium was the placement of that payroll into code classifications which have different applicable premium rates. (*See* Anhorn Affidavit, § 13.) American Home used the classifications provided by Phineas and included on the Information Page of the Policy to calculate the final premium in October 2001. (*See* dkt. 41 ex. G; Anhorn Affidavit, §§ 6 & 11.) It appears that Phineas submitted these same classifications to the State of Florida Medicaid Office to justify more reimbursement funding from the State in September 2001. (*See* dkt. 240, tab L(1); Anhorn Affidavit, §§ 18–20.)

American Home also used the experience rating modification factor in its calcu-

lation of the final premium. (*See* Anhorn Affidavit, § 13.) This factor takes into account past experience of the actual insured to adjust the specific rate to that specific experience and it is established by a rating organization, namely the National Council on Compensation Insurance ("the NCCI"). (*See id.*) The factor used by American Home in the calculation of the final premium was 1.63 or in other words, the factor provided by the NCCI for Phineas required American Home to multiply its initial premium amount by 1.63, indicating that Phineas' experience in the past was 1.63 times the average experience expected for similar insureds. (*See id.* at § 19.) In September 2001, before any audit results were known, Defendants even submitted this 1.63 experience modifier in support of an interim rate increase from the Florida Medicaid Office due to the increase expense of workers' compensation insurance. (*See id.*) In sum, the record shows that American Home used only numbers provided by Phineas and regulators in calculating the final premium owed under the Policy.

■ Notwithstanding the foregoing, Phineas' current challenges to the final premium on the basis of "improper classification" and other premium calculation defenses are themselves improper. *Florida Welding & Erection Serv., Inc. v. American Mutual Ins. Co. of Boston,* 285 So.2d 386, 389 (Fla.1973). In *Florida Welding,* a workers' compensation insurer brought an action against the insured for additional workers' compensation premiums. The Florida Supreme Court observed that the insurer mistakenly billed its insured "less premium than would have been due for the

period because it mistakenly used a lower experience modification factor than it should have used." *Id.* at 387.[1] In *Florida Welding,* the Court held that an insurer's mistake could not be used by an insured to get a lower premium: "This is necessary to insure that there is no discrimination between insureds . . . ." *Id.* As American Home correctly points out in its memorandum, the Florida Supreme Court thereby recognized the necessity of deferring to the workers' compensation system in any dispute under a workers' compensation policy.

The Florida Supreme Court found that Section 627.371, Florida Statutes, provides an "adequate basis for administrative review" and that summary judgment was appropriate because the insured's "failure to exhaust administrative remedies under the statute" precluded "a challenge of the billed rates in the circuit court proceeding. *Money judgment was accordingly correctly entered against the appellant [insured]."* *See id.* at 389–90 (emphasis added). *Florida Welding* was applied in *International Patrol and Detective Agency, Inc. v. Aetna Casualty & Surety Co.,* 396 So.2d 774 (Fla. 1st DCA 1981). In *International Patrol,* workers' compensation insureds sought to maintain an action in circuit court to challenge workers' compensation rates. The circuit court entered summary judgment in favor of the insurer because "International Patrol had an adequate administrative remedy available and was accordingly barred from bringing its action in circuit court." 396 So.2d at 776. The Florida Supreme Court affirmed. *International Patrol & Detective Agency, Inc. v. Aetna Casualty & Surety Co.,* 419 So.2d 323 (Fla.1982).

---

1. Similarly, Phineas contests the magnitude of the adjustment to the final premium, asserting that it revealed to American Home before the Policy was issued that its payroll would approximate $48 million annually, even though Phineas' insurance application, on which the estimated premium was based, only disclosed $34.7 million in annual payroll. (Dkt.237)

Courts in other states have also granted summary judgment in favor of an insurer under circumstances similar to those in the instant case. In *Liberty Mutual Ins. Co. v. John Gailer, Inc.*, 1997 WL 328074 (S.D.N.Y.1997), given policy language nearly identical to the instant Policy, the district court found that the defense of improper classification is not within the court's jurisdiction, but rather within the jurisdiction of the insurance regulators. *Id.* at *2. The court awarded summary judgment to the carrier for its final premium. *Id.; see also Investors Ins. Co. Of America v. Karbel Wholesale Autos., Inc.*, 148 Misc.2d 933, 934, 569 N.Y.S.2d 323 (N.Y.Sup.App.Term 1990)(awarding summary judgment to workers' compensation insurer and finding that "it is well settled that the defense of improper classification is not within the jurisdiction of the court below and cannot properly be raised in that forum"); *D.A.X. v. Employers Ins. of Wausau*, 659 N.E.2d 1150, 1157 (Ind.Ct. App.1996) (holding that where an insured failed to contest a reallocation of employee payroll from one state to another through mandatory administrative remedy, insured was estopped from raising same issue in trial court); *Commissioners of the State Ins. Fund v. Regenstreif*, 27 Misc.2d 1049, 208 N.Y.S.2d 161, 162 (N.Y.Supp.Term 1960) (granting motion for summary judgment in favor of plaintiff insurance company seeking payment of premium and ruling that defenses "involv[ing] the correctness and propriety of payroll rates and classifications ... cannot be raised until [insureds] exhaust the mandatory administrative [remedies] created by law"). American Home correctly argues that the same result is appropriate here.

Phineas also alleges that American Home cannot reallocate payroll between classification codes 8861 and 9110 because of its "failure to issue required endorsements regarding employee classifications."

(Dkt. 240, tab A, § 86.) As American Home correctly points out, this defense involves an interpretation of the Basic Manual approved by the OIR and an interpretation of the Florida State Special Audit Rules ("1991 Special Audit Rules"), F.A.C. Rule 4–189.003(4) (2000). As such, this is an argument that should be raised in Phineas' state administrative proceedings, not in this Court.

Ultimately, Phineas wants to be charged an estimated premium based upon an estimated payroll and its own unregulated views of how its payroll should be allocated to NCCI classification codes and the corresponding OIR premium rates. According to *Florida Welding*, such a premium would be discriminatory to other insureds in violation of Florida Law and Phineas simply cannot use this forum to contest American Home's good faith calculation of the final premium. Phineas had statutory notice of its administrative remedies since before the inception of this case. Phineas delayed until April of this year to initiate administrative proceedings before the Department of Financial Services and the OIR and thus, to properly raise its instant classification and premium calculation defenses. While those two proceedings, as well as a state Dade County circuit court action, are currently pending, this Court previously determined, in its Order denying Defendants' Motion for Stay or Abatement, that none of those proceedings impacts this Court's ability to determine that Phineas breached its contract with American Home is therefore obliged to pay the final premium of $2,340, 661.00 due under the Policy. (Dkt.341) Payment of the final premium is clearly what the Policy requires.

*Counts I, II, and IV of Defendants'*
*Counterclaims: Fraud, Negligent*
*Misrepresentation, and Recision*

■ Counts I, II, and IV of Defendants' counterclaims in this action are

meritless for two reasons: (1) they challenge the calculation of the Policy premium which is improper, as addressed above; and (2) Defendants fail to present evidence supporting the requisite elements of the counterclaims. To establish fraud, Defendants must prove: "(1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." *Lance v. Wade,* 457 So.2d 1008, 1011 (Fla. 1984). Defendants' Risk Manager and Defendants' insurance advisor/broker, both of whom represented Defendants during the parties' meeting before the Policy was purchased, each conceded at deposition that there was simply no misrepresentation. (*See* dkt. 240, tab F, Aguilar Deposition, pp. 29 & 96; tab J, Burton II Deposition, p. 52.) In addition, there was no duty of disclosure arising from any fiduciary or confidential relationship inasmuch as this was an arms-length transaction. A fiduciary or confidential relationship is only established with substantial evidence of both: (1) dependency by one party; and (ii) an "undertaking by the other party to advise, counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp.,* 764 F.Supp. 176, 179 (S.D.Fla.1991) (citations omitted); *Watkins v. NCNB Nat'l Bank of Fla.,* 622 So.2d 1063, 1065 (Fla. 3d DCA 1993). These elements are not present here.

■ Moreover, any prior oral negligent misrepresentations alleged by Defendants are directly contradicted by the ultimate written terms of the Policy and thus, any reliance on said misrepresentations is unjustified. *Capital Bank v. MVB, Inc.,* 644 So.2d 515, 521 (Fla. 3d DCA 1994); *Tevini v. Roscioli Yacht Sales, Inc.,* 597 So.2d 913

(Fla. 4th DCA 1992); *Polk v. Crittenden,* 537 So.2d 156, 159–60 (Fla. 5th DCA 1989). Defendants' written quote, Binder, and Policy all clearly state that the final premium would be determined after the Policy term. (Dkt. 240, tabs J(2), F(5), & B(1), p. 5; dkt. 41, ex. C.) Defendants' Risk Manager, Mr. Aguilar, signed the binder based upon the approval and authorization of Defendants' Board. (Dkt. 240, tab F, Aguilar Deposition, p. 32.) A person who signs an insurance contract is presumed to know its contents. *Swift v. North American Co. for Life and Health Ins.,* 677 F.Supp. 1145, 1150 (S.D.Fla.1987), *aff'd,* 838 F.2d 1220 (11th Cir.1988); *Kimbal v. Travelers Ins.,* 151 Fla. 786, 10 So.2d 728, 730 (1942). In his deposition, Mr. Aguilar admitted that he was principally involved in the parties' negotiation as Defendants' representative; that he was very familiar with "guaranteed cost" policies; that he fully understood how premium would be calculated under a "guaranteed cost" policy; that he would expect premiums to change during the audit of a "guaranteed cost" policy; and that the instant Policy was the third "guaranteed cost" workers' compensation insurance policy purchased by Defendants. (*See* dkt. 240, tab F, Aguilar Deposition, pp. 25–29, 87, & 94.)

■ Finally, to the extent Defendants' recision claim is based upon fraud (dkt. 240, tab A, p. 10), it fails for the reasons already explained by the Court. To the extent the claim is based on "mutual mistake" (dkt. 240, tab A. p. 10), Defendants must present proof that upon discovery of the mistake they denied that the contract was binding upon them. *Rood Co. v. Board of Pub. Instruction,* 102 So.2d 139, 141 (Fla.1958). The record is devoid of the required proof. Phineas admitted that the Policy was a valid and binding contract five months prior to pleading recision. (*See* dkt. 240, tabs G and I, § 14.) Defen-

dants' current Answer also admits that the Policy is a valid and binding contract and admits that "each of Defendants' employees were covered by the Policy and provided a benefit by American Home." (*See id.* at tab A, §§ 33–36.)

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED:**

1. Plaintiff's Amended Motion for Summary Judgment (dkt.314) is granted.

2. The Clerk shall enter final judgment in favor of Plaintiff and against Defendants as to Count I of the Amended Complaint (breach of contract against Defendant Phineas) and Counts I, II, and IV of Defendants' Counterclaims (fraud, negligent misrepresentation, and recision), in the amount of $2,340,661.00, the final premium due under the subject insurance policy, plus prejudgment interest.

3. Plaintiff is directed to provide the Court with its calculation of prejudgment interest on or before July 9, 2004.

4. All remaining Counts of the Amended Complaint (dkt.41) and Defendants' Counterclaims (dkt.67) are rendered moot by this Judgment.

5. The Clerk shall terminate any pending motions and close this case.

### ORDER ON MOTION FOR REHEARING

This cause comes before the Court on Defendants' Motion for Rehearing and/or Reconsideration and/or Other Appropriate Relief From June 29, 2004 Order (Dkt.348) and supporting memorandum of law (Dkt.349) and Plaintiff's Response in opposition. (Dkt.356).

On August 26, 2004, the Court held a hearing on the limited issue of whether the final judgments as to count one of the amended complaint in this case (Plaintiff's breach of contract claim) for the amount of $2,340,661.00, the final premium due under the insurance policy (Dkt.343), and for the amount of $457,971.14, in prejudgment interest (Dkt.346), were erroneously entered against all Defendants, rather than just Defendant The Phineas Corporation ("Phineas"). Defendants argue that the judgments should not have been entered against any Defendant other than Phineas because the other Defendants were not named in count one of the amended complaint (Dkt.41) or in Plaintiff's amended motion for summary judgment. (Dkt.314) Plaintiff contends, relying on Rule 54(c) of the Federal Rules of Civil Procedure, that it is indeed entitled to the final judgments for premium due and prejudgment interest against all Defendants based on the facts shown in this case, even though Phineas was the only Defendant named in count one. After careful consideration of the arguments presented by counsel and the relevant case law, the Court finds that the aforementioned judgments against all Defendants were entered in error.

There is no question that as to count one of Plaintiff's second amended complaint, Plaintiff, in compliance with Rule 8(a)(3), Federal Rules of Civil Procedure, only demanded relief in the form of damages against Phineas for breach of contract.[1] Notwithstanding its failure to demand relief against all Defendants in count one as required by Rule 8(a)(3), Plaintiff now contends this Court has the authority to enter judgment against all Defendants as to count one under Rule 54(c). The Court rejects Plaintiff's contention.

The Eleventh Circuit has "explained that under Rule 8(a)(3), any pleading that sets forth a claim must include a

---

1. Rule 8(a)(3) provides in pertinent part that "a pleading which sets forth a claim for relief, ..., shall contain ... (3) a demand for judgment for the relief the pleader seeks."

'concise statement identifying the remedies and the *parties* against whom relief is sought ....'" *Cohen v. Office Depot, Inc.,* 184 F.3d 1292, 1297 (11th Cir.1999), *vacated in part on other grounds,* 204 F.3d 1069 (11th Cir.2000) (quoting *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1161 (11th Cir. 1993)) (emphasis added). And, although Rule 54(c) holds that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings[,]" the court in *Cohen* also observed that "we do not view that language of Rule 54(c) as eviscerating Rule 8(a)(3)'s express and unambiguous direction that the plaintiff include a demand for relief in her pleadings." 184 F.3d at 1298. The *Cohen* court finally noted that the portion of Rule 54(c) relating to default judgments, which provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment[,]" "actually reinforces Rule 8(a)(3)'s direction that the relief sought be included in the complaint."

Consequently, in light of the Eleventh Circuit's clear limitation on the reach of Rule 54(c) when one does not plead a specific claim for relief against a specific party in compliance with Rule 8(a)(3), and in light of the Plaintiff's clear failure to include a claim for relief for breach of contract against any Defendant other than Phineas in count one of the amended complaint, it was error for this Court to enter judgment against the other Defendants as to count one.[2]

**ACCORDINGLY,** it is **ORDERED AND ADJUDGED:**

1. Defendants' Motion for Rehearing and/or Reconsideration and/or Other Appropriate Relief From June 29, 2004 Order (Dkt.348) is granted to the extent that the final judgments in this case for final premium due under the insurance policy and prejudgment interest will be amended to reflect entry against Defendant Phineas alone. Defendants' motion is denied in all other respects.

2. The Clerk is directed to enter an amended final judgment in this case to replace the judgments entered at Dockets 343 and 346. The amended final judgment shall be entered in favor of Plaintiff and against Defendant Phineas as to count one of the amended complaint (breach of contract against Defendant Phineas) in the amount of $2,340,661.00, the final premium due under the subject insurance policy, plus prejudgment interest in the amount of $457,971.14. The amended final judgment shall also be entered in favor of Plaintiff as to counts one, two, and four of Defendants' counterclaims (fraud, negligent misrepresentation, and recision).

### *ORDER*

This cause comes before the Court on Plaintiff's Motion to Amend Amended Final Judgment (dkt.375). The Motion can be resolved without a response from Defendants.

On June 29, 2004, this Court entered an Order granting Plaintiff's Amended Motion for Summary Judgment (dkt.314), and directed the entry of final judgment in favor of Plaintiff and against all Defendants as to Count I of the Amended Complaint and Counts I, II, and IV of Defendants' Counterclaim in the amount of $2,340,661.00, the final premium due under

---

**2.** The Court also finds persuasive the decision in *Barkett v. Hardy,* 571 So.2d 13, 14 (Fla. 2d DCA 1990), in which the court held consistent with the law of Florida that "[e]ntering judgment against a defendant not named in the pertinent pleading is clear error." *Accord Miller v. Selden,* 591 So.2d 1063, 1064 (Fla. 4th DCA 1991).

the insurance policy, plus prejudgment interest. (Dkt.342) Because Plaintiff's Motion for Summary Judgment made no mention of any other counts of the Amended Complaint, the Court understood, and ruled accordingly, that "all remaining Counts of the Amended Complaint (dkt 41) and Defendants' Counterclaims (dkt.67) are rendered moot by this Judgment." (Dkt.342, p. 13.) The Court further directed the Clerk to terminate any pending motions and close this case. (*See id.*) On July 13, 2004, the Court ordered the entry of judgment in favor of Plaintiff for prejudgment interest in the amount of $457,971.14. (Dkt.345)

To date, Plaintiff has not sought reconsideration of any aspect of the Court's June 29, 2004, or July 13, 2004, Orders. Defendants, on the other hand, sought reconsideration of both Orders. (Dkts. 348 & 357) In pertinent part, Defendants argued that the Judgments should not have been entered against any Defendant other than Phineas because the other Defendants were not named in Count I of the amended complaint. (Dkts. 348 & 349) The Court held a hearing on this limited issue on August 26, 2004, and after careful consideration, the Court held that an error was made in entering judgment against all Defendants as to Count I. (Dkt.370) As such, on August 27, 2004, the Court granted Defendants' Motion for Reconsideration (dkt.348) to the limited extent that the Final Judgments in this case would be amended to reflect entry against Defendant Phineas alone. (Dkt.370) The Court denied Defendants' Motion for Reconsideration in all other respects. On August 30, 2004, the Clerk entered an Amended Judgment in favor of Plaintiff and against Defendant Phineas for the final premium due ($2,340,661.00) and for prejudgment interest ($457,971.14). (Dkt.371)

Plaintiff now asks the Court to amend its Amended Final Judgment to:

(a) show final judgment under Count I against Phineas and in favor of American Home, a judgment that American Home accepts as a full remedy against Phineas (negating Count II and dropping Phineas as a Defendant in Count III);

(b) clarify that Count III remains against Defendant Sunrise Community, Inc.;

(c) clarify that Count IV remains against all Defendant besides Phineas;

(d) direct entry of a Final Judgment against Defendant Phineas pursuant to Rule 45(b);

(e) expressly certify pursuant to Rule 54(b) that there is no just reason for delaying entry of a final appealable judgment against Defendant Phineas, and provide the reasoning for that certification;

(f) stay further proceedings on the remaining claims; and

(g) grant such further relief as may be necessary and appropriate.

(Dkt.375)

The Court finds that Plaintiff's Motion is due to be denied. Pursuant to the Court's June 28, 2004 Order, "all remaining Counts of the Amended Complaint (dkt 41) and Defendants' Counterclaims (dkt.67) [were] rendered moot . . . ." and the Court directed the Clerk to terminate any pending motions and close this case. (Dkt.342) Plaintiff has never sought reconsideration of these rulings. Further, these rulings were not altered by the Court's August 27, 2004 Order granting Defendants' Motion for Reconsideration to the limited extent that the Judgments in this case would be amended to reflect entry against Defendant Phineas alone (dkt.370) or by the Amended Final Judgment itself (dkt.371).

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Plaintiff's Motion to Amend Amended Final Judgment (dkt.375) is **DENIED**.